**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **STINGRAY IP SOLUTIONS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **SIGNIFY N.V.,** | § | |
| **SIGNIFY (CHINA) INVESTMENT CO.,** | § | **CIVIL ACTION NO. 2:21-CV-00044-** |
| **LTD.,** | § | **JRG** |
| **SIGNIFY HONG KONG LIMITED,** | § | |
| **SIGNIFY NETHERLANDS B.V., and** | § | |
| **SIGNIFY POLAND SP. Z.O.O.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Stingray IP Solutions, LLC ("Stingray" or "Plaintiff") files this First Amended

Complaint in this Eastern District of Texas (referred to herein as "this District") against Signify

N.V., Signify (China) Investment Co., Ltd., Signify Hong Kong Limited, Signify Netherlands

B.V., and Signify Poland Sp. z.o.o. (collectively referred to as "Signify Defendants" or

"Defendants") for infringement of U.S. Patent No. 7,082,117 (the "'117 patent"), U.S. Patent No.

7,224,678 (the "'678 patent"), U.S. Patent No. 7,440,572 (the "'572 patent"), and U.S. Patent No.

7,616,961 ("the '961 patent"), which are referred to herein as the "Asserted Patents.

## THE PARTIES

1.     Stingray IP Solutions, LLC is a Texas limited liability company, located at 6136

Frisco Sq. Blvd., Suite 400, Frisco, TX 75034.

2.     On information and belief, Defendant Signify N.V. (referred to herein as "Signify

NV") is a public company with limited liability incorporated under the laws of the Netherlands.

Its principal place of business is located at High Tech Campus 48, 5656 AE Eindhoven, The

Netherlands. Signify NV was established as "Philips Lighting" in 2016 after spinning off from Koninklijke Philips N.V., then changed its name to Signify N.V. in 2018. Signify NV is the "parent company of the Signify group." The term "Signify," as used herein shall refer to Defendant Signify NV and its subsidiaries in the "Signify group," which include, but are not limited, to other defendants named in this lawsuit. *See also Annual Report 2020*, Signify, at 62, https://www.signify.com/static/2020/signify-annual-report-2020.pdf (tying the term "Signify" to Section 2:24b of the Dutch Civil Code, which refers to a group as "an economic unit in which legal persons and commercial partnerships are organizationally interconnected") (last visited June 7, 2021); *see also Article 24b Definition of a 'group'*, Dutch Civil Code, *available at* http://www.dutchcivillaw.com/civilcodebook022.htm (last visited June 8, 2021).

3.     Signify NV "operates in many countries," including the U.S., "via its subsidiaries and affiliated companies as well as a limited number of branch offices, which primarily act under the Signify trade name." *See Annual Report 2020*, Signify, at 62, https://www.signify.com/static/2020/signify-annual-report-2020.pdf (last visited June 7, 2021). As the parent company of about 150 subsidiaries operating in 74 countries, including the U.S., Signify NV participates in the management and operations of three divisions of Signify for Signify products: Division Digital Solutions, Division Digital Products, and Division Conventional Products. *See Annual Report 2020*, Signify, at 29, https://www.signify.com/static/2020/signify-annual-report-2020.pdf (last visited June 7, 2021). In particular, among other duties, "[t]he Board of Management is responsible for the establishment and adequate functioning of a system of governance, risk management and internal controls in the company." *Id*. at 77 (Statement of the Board of Management of Signify NV). Moreover, the Board of Management is the "chief operating

decision maker" of the operating segments which are "components of Signify's business activities." *Id*. at 90.

4.     On information and belief, Defendant Signify (China) Investment Co., Ltd. (referred to herein as "Signify China") is a limited liability company organized under the laws of the People's Republic of China ("China"), with its principal place of business located at Building No. 9 Lane 888, Tian Lin Road, Shanghai, China and/or No. 8 Min Tai Road Economy Development Zone, Yizheng, Jiangsu province. Signify China was formerly known as "Philips Lighting (China) Investment Co., Ltd." and is a wholly owned and controlled subsidiary of Signify NV. *See Annual Report 2020*, at 107 (listing Signify China as a 100% owned and consolidated company). Signify China designs, develops, manufactures Signify products for importation, distribution, and sale in the United States.

5.     On information and belief, Defendant Signify Hong Kong Limited (referred to herein as "Signify HK") is a limited liability company organized under the laws of Hong Kong, China, with its principal place of business located at 20th Floor, Tower 2, Enterprise Square One No. 9 Sheung Yuet Road, Kowloon Bay, Hong Kong, China. *See Signify Hong Kong*, SIGNIFY, https://www.signify.com/en-hk/contact (last visited June 7, 2021). Signify HK is a wholly owned and controlled subsidiary of Signify NV. *See Annual Report 2020*, at 107 (listing Signify HK as a 100% owned and consolidated company). Signify HK imports Signify products into the U.S. for distribution and sale by U.S. based subsidiaries of Signify and by third-party distributors.

6.     On information and belief, Defendant Signify Netherlands B.V. (referred to herein as "Signify Netherlands") is a corporation organized under the laws of the Netherlands, with its principal place of business located at High Tech Campus 48, 5656 AE Eindhoven. Signify Netherlands is a wholly owned (indirectly) and controlled subsidiary of Signify NV. *See Annual*

*Report 2020*, at 107 (listing Signify Netherlands as a 100% owned and consolidated company). Defendant Signify Netherlands shares the same corporate office/headquarters with its direct parent Signify Holding B.V. (a corporation formed under the laws of The Netherlands) and with Defendant Signify NV, which is the parent company of all Signify subsidiaries. Signify Netherlands imports Signify products into the U.S. for distribution and sale by U.S. based subsidiaries of Signify and by third-party distributors.

7.     On information and belief, Defendant Signify Poland Sp. z.o.o. (referred to herein as "Signify Poland") is a limited liability company organized under the laws of Poland, with its principal place of business located at Al. Jerozolimskie 195B, 02-222 Warszawa, Poland. Signify Poland is a wholly owned and controlled subsidiary of Signify NV. *See Annual Report 2020*, SIGNIFY, at 107 (listing Signify Poland as a 100% owned and consolidated company). Signify Poland operates production sites in Poland to design develop, and manufacture Signify products for importation, distribution, and sale in the United States.

8.     On information and belief, the Signify Defendants maintain a corporate presence in the United States via at least Signify NV's wholly-owned (indirectly) and controlled U.S.-based subsidiary Signify North America Corporation ("Signify NA"), among other subsidiaries and affiliates. *See Annual Report 2020*, SIGNIFY, at 107, https://www.signify.com/static/2020/signify-annual-report-2020.pdf (listing Signify NA as a 100% owned and consolidated company) (last visited June 7, 2021). Signify NA is organized under the laws of the state of Delaware, with its principal place of business located at 200 Franklin Square Drive, Somerset, New Jersey 08873. Signify NA is registered to do business in Texas and has a place of business located at 1611 Clovis R Barker Rd, San Marcos, TX 78666. As part of its activities in the United States, Signify NA receives Signify products shipped by the Signify group, including, but not limited to, the Signify

Defendants. These Signify products are distributed, offered for sale and sold by Signify NA as part of and on behalf of the Signify group, which includes the Defendants in this lawsuit.

9.    On information and belief, Signify NA is wholly owned by the Genlyte Group Inc. (referred to herein as "Genlyte"), a corporation organized under the laws of Delaware and having its principal office in 200 Franklin Square Drive, Somerset NJ 00873. Genlyte is wholly owned by Signify Holding B.V., a corporation organized under the laws of The Netherlands. And Signify Holding B.V. is wholly owned by Defendant Signify NV. Genlyte is engaged in the business of manufacturing and selling luminaires and lighting fixtures.

10.    On information and belief, the Signify Defendants may also be served with process in the U.S. through at least Signify NA, including via its corporate officers and via Signify NA's registered agent for service of process, Corporation Service Company, at 251 Little Falls Dr., Wilmington, Delaware 19808. Signify NA operates as least as an agent (e.g., a managing or general agent) for the Signify Defendants under Federal Rule of Civil Procedure 4(h)(1)(B) and/or is the alter ego of one or more of the Signify Defendants.

11.    On information and belief, Signify states that it "is the world leader in lighting." *Annual Report 2020*, SIGNIFY, at 2. Signify has seven manufacturing sites in the United States. *Id*. at 28. In its Digital Products division, Signify offers products under at least two "smart home lighting brands, Philips Hue and WiZ Connected." *See Annual Report 2020*, SIGNIFY, at 18. In 2020, worldwide sales, including from the U.S., of Signify's Digital Products were €2.29 billion EUR (about $2.79 billion U.S. dollars). *Id*. at 25. Signify also holds €2.26 billion EUR (about $2.76 billion U.S. dollars) worth of tangible and intangible assets in the United States. Signify (formerly Philips Lighting) introduced the Philips Hue line of products in 2012, which provided

connected lighting for consumers. *Id*. at 24-25. These products allow users to "control lights wirelessly through apps and smart devices, with their voice or with remote control switches." *Id*.

12.    On information and belief, in 2019, Signify acquired full ownership of WiZ Connected Lighting Company Ltd.  ("WiZ") for its "WiFi-based connected lighting" products. *Annual Report 2019*, SIGNIFY, at 7, https://www.signify.com/static/2019/signify-annual-report-2019.pdf (last visited June 8, 2021). The acquisition "enables Signify to extend its leadership by stepping into the Wi-Fi-based smart lighting market." *Id*. at 25. WiZ is a "lighting software solutions company based in Hong Kong" that is "deployed in 40 countries across the Americas, Europe, the Middle East and Asia Pacific." *WiZ – About*, WIZ CONNECTED, https://www.wizconnected.com/en-MY/about-wiz/ (last visited January 29, 2021). Signify made the acquisition in order to "address a larger customer base in the growing market of Wi-Fi-based lighting." *Id*. WiZ provides "an open IoT [Internet-of-Things] platform" with an "easy-to-use, scalable solution" that is "accessible to all lighting and electrical vendors." *Id*.

13.    On information and belief, in 2020, Signify announced an expansion of WiZ product availability in the United States, increasing the variety of bulbs, downlights, lightstrips, and accessories available to U.S. customers. *See Signify US expands WiZ Connected Ecosystem*, SIGNIFY,  https://www.signify.com/en-us/our-company/news/press-releases/2020/20200827-wiz-launches-a-brand-new-generation-of-products (August 27, 2020). Recently, WiZ developed ROBUST, a "new Wi-Fi + Bluetooth mesh architecture" that is being rolled out on its products as of the first quarter of 2021 and will also be implemented on other existing WiZ products. *WiZ – Innovation*, WIZ CONNECTED, https://www.wizconnected.com/en-MY/innovation/ (last visited January 29, 2021). WiZ products and other Signify products connect to users' Wi-Fi networks and are controlled by the WiZ mobile application, which is available on iOS or Android and can

integrate with Amazon Alexa, Google Home, or Siri. *Signify US expands WiZ Connected Ecosystem*, SIGNIFY, *supra*. The acquisition of WiZ "further extended the accessibility of consumer connected lighting…enabling users "to connect via WiFi, Bluetooth, or via the Philips Hue bridge." WiZ also offers its products as an OEM component for third-party manufacturers. *See, e.g., WiZ Connected, OEM Partnerships*, WIZ CONNECTED LIGHTING CO., LTD. https://www.wizconnected.com/en-MY/oem/ (last visited June 9, 2021). The CEO of Signify and member of Defendant Signify NV's Board of Management states that "[w]e are very pleased to join forces with the teams of WiZ Connected who have developed a great technology platform enabling us to address a larger customer base in the growing market of Wi-Fi-based lighting." *Id*.

14.    On information and belief, in 2020, Signify acquired Cooper Lighting, LLC ("Cooper Lighting") as a consolidated and controlled subsidiary. *See Annual Report 2020*, SIGNIFY, at 23, 106-107 (identifying Cooper Lighting as a material acquisition). Cooper Lighting provides "professional lighting, lighting controls, and connected lighting." *Id*. at 23. Cooper Lighting is a limited liability company headquartered in Peachtree City, Georgia and provides its products under the "Halo, McGraw, Metalux and StreetWorks" brands. *Id*. at 106.

15.    On information and belief, Signify NV controls its consolidated subsidiaries identified at least in Signify's *Annual Report 2020*, including, but not limited to, Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries Signify NA (US based), and Cooper Lighting (US based)). *See Annual Report 2020*, SIGNIFY, at 107 (identifying Signify's "material subsidiaries" and stating that "[t]he Consolidated financial statements comprise the assets and liabilities of approximately 150 legal entities."). In that report it states, in relevant part, "[t]he Consolidated financial statements comprise the financial statements of Signify N.V. and all subsidiaries it controls (i.e., when it is exposed, or has rights, to

variable returns from its involvement with the investee and has the ability to affect those returns through its power over the investee)." *Id.* at 91. The report further adds that "[s]ubsidiaries are fully consolidated from the date that control commences until the date that control ceases." *Id.* Each of the listed consolidated subsidiaries, by nature of being controlled by Signify NV, is an agent and/or alter ego of Signify NV, as the parent of the Signify group.

16.    Through offers to sell, sales, imports, distributions, and other related agreements with affiliates, distributors, and customers operating in and maintaining a significant business presence in the U.S. and/or via their subsidiaries maintaining such a presence, including via wholly owned (indirectly), consolidated, and controlled subsidiaries Signify NA, Genlyte, WiZ, and Cooper Lighting, Signify does business in the U.S., the state of Texas, and in this District. Defendants may be served with process via its agents and/or alter egos in the U.S., including via Signify NA, and/or via the relevant provisions of the Hague Convention.

## JURISDICTION AND VENUE

17.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### *Defendant Signify NV*

19.    On information and belief, Defendant Signify NV is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State, including: (A) based on at least part of its own infringing activities or those committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in

this state and this judicial district and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Signify NV is related to, owns, and/or controls consolidated subsidiaries (such as Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries Signify NA (US based), Genlyte (US based), WiZ, and Cooper Lighting) that have a significant business presence, including by conducting activities vicariously through or in concert with other related entities, in the U.S. and in Texas. Such a presence and activities further the development, design, manufacture, importation, distribution, sale, and use of infringing Signify products in Texas. As one example of such activities, Signify NV's wholly-owned and controlled, U.S.-based subsidiary Signify NA, which manages its North America operations and is based in the United States, has offices and employees in Texas at least at 1611 Clovis R Barker Rd, San Marcos, TX 78666 where it operates a manufacturing facility. *See Production Worker*, SIGNIFY, https://www.careers.signify.com/jobs/production-worker-san-marcos-2/ (last visited June 7, 2021) (advertising a job "for a Production Worker to join our luminaire manufacturing team in San Marcos, TX"). Through direction and control of its subsidiaries, Signify NV has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Signify NV would not offend traditional notions of fair play and substantial justice.

20.    Upon information and belief, Defendant Signify NV controls or otherwise directs and authorizes all activities of its subsidiaries, including, but not limited to Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries Signify NA, Genlyte, WiZ, and Cooper Lighting, which, have a significant business presence in Texas. Directly and via at least its subsidiaries in the Signify group, who act as agents and/or alter egos of Defendant, and via intermediaries, such as affiliates, distributors, and customers, Signify NV has placed and continues to place infringing Signify products into the U.S. stream of commerce. Signify NV has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

21.    On information and belief, Defendant Signify NV utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers, including offering such products for sale via its own websites—www.philips-hue.com and www.usa.lighting.philips.com. *See, e.g., Choose a bulb – Smart Lighting*, Philips, https://www.usa.lighting.philips.com/consumer/choose-a-bulb/products#filters= SMARTLIGHTING_BULB_SU&sliders=&support=&price=&priceBoxes=&page=&layout=12. subcategory.p-grid-icon. Signify NV's corporate website also provides links for consumers and professionals to access on-line stores operated by the Signify group. *See, e.g., For Consumers*,

SIGNIFY, https://www.signify.com/global/our-offers/for-consumers (providing a link to the Philips Hue brand of "Smart Home Lighting"). Moreover, Signify NV utilizes its subsidiaries and intermediaries, such as Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries Signify NA, Genlyte, WiZ, and Cooper Lighting, to design, develop, import, distribute, and service infringing products, such as Philips and WiZ Wi-Fi connected lighting devices and Philips Hue products. Such Signify products have been sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See., e.g., Where to Buy*, PHILIPS, https://www.usa.lighting.philips.com/consumer/where-to-buy (providing links to purchase Philips lighting products online or at Home Depot or Walmart stores, which each have multiple locations in this judicial district and elsewhere in Texas).

22.   On information and belief, Signify NV purposefully places infringing Signify products in established distribution channels in the stream of commerce by contracting with national retailers who sell Signify's products in the U.S., including in Texas and this judicial district. Signify NV, directly or through its subsidiaries and affiliates, contracts with these companies with the knowledge and expectation that Signify products will be imported, distributed, advertised, offered for sale, and sold in the U.S. market.  *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located"). For example, at least Home Depot, Walmart, and Amazon.com offer for sale and sell Signify products, in and specifically for the U.S. market, via their own websites or retail stores located in and selling their products to consumers in Texas and this judicial district. *See, e.g., White and Color Ambiance Dimmable LED Light Strip Plus Smart Wireless Light Base Kit (80") by Philips Hue*, HOME

Depot,      https://www.homedepot.com/p/Philips-Hue-White-and-Color-Ambiance-Dimmable-LED-Light-Strip-Plus-Smart-Wireless-Light-Base-Kit-80-555334/313025879      (last      visited January 29, 2021) (showing Signify's Philips Hue product for sale and in stock at a Home Depot location in Frisco, Texas in this judicial district). Signify NV, directly and through its subsidiaries and affiliates, also provides multiple types of application software for download and use in conjunction with and as part of its wireless lighting devices: the "Philips Hue App" is used in conjunction with Philips Hue products and the "WiZ App" is used in conjunction with WiZ products as well as Philips Smart Lighting products. Both the Philips Hue App and the WiZ App are available via digital distribution platforms by Apple Inc. and Google. *See, e.g., Philips Hue*, Google                                                               Play, https://play.google.com/store/apps/details?id=com.philips.lighting.hue2&hl=en_US&gl=US (last visited January 29, 2021) (offering the application for download and indicating that the application is      offered      by      "Signify      Netherlands      B.V."); *WiZ*,      Google      Play, https://play.google.com/store/apps/details?id=com.tao.wiz&hl=en_US&gl=US      (last      visited January 29, 2021) (offering the application for download and indicating that the application is offered by "WiZ Connected Lighting Company Limited").

23.   Based on Signify NV's connections, relationships, supply contracts, and other agreements, with subsidiaries in the Signify group (including, but not limited to Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries Signify NA, Genlyte, WiZ, and Cooper Lighting), U.S.-based national retailers, distributors, and digital distribution platforms, Signify NV knows that Texas, including this District, is a termination point of the established distribution channel, namely online and brick and mortar stores offering Signify products, including under the Philips Hue, WiZ, and Cooper Lighting brands, and software to

consumers in Texas. Signify NV, therefore, has purposefully directed its activities at Texas and this District, and should reasonably anticipate being brought in this Court, at least on this basis. *See Ultravision Technologies, LLC v. Holophane Europe Limited*, 2020 WL 3493626, at *5 (E.D. Tex. 2020) (finding sufficient to make a *prima facie* showing of personal jurisdiction allegations that "Defendants either import the products to Texas themselves or through a related entity"); *see also Bench Walk Lighting LLC v. LG Innotek Co., Ltd et al.*, Civil Action No. 20-51-RGA, 2021 WL 65071, at *7-8 (D. Del., Jan. 7, 2021) (denying motion to dismiss for lack of personal jurisdiction based on the foreign defendant entering into supply contract with U.S. distributor and the distributor sold and shipped defendant's products from the U.S. to a customer in the forum state).

24.    In the alternative, this Court has personal jurisdiction over Signify NV under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Signify NV is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Signify NV is consistent with the U.S. Constitution.

25.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendant Signify NV is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c).

### *Defendant Signify China*

26.    On information and belief, Defendant Signify China is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State, including: (A) based on at least part of its own infringing activities or those activities committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court;

and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Signify China together with parent Defendant Signify NV, Defendants Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries of the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting manufacture, import, distribute, offer for sale, sell, and induce infringing use of Signify products to distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users.

27.    This Court has personal jurisdiction over Signify China, directly and/or indirectly via the activities of Signify China's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including parent Defendant Signify NV, Defendants Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting. Alone and in concert with or via direction and control of or by at least these entities, Signify China has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, Signify China operates within a global network of companies, affiliates and offices for the manufacture, distribution, importation, and sale of Signify products that includes subsidiaries in the Signify group, distributors, retail stores, dealers, resellers, and professional installers operating in Texas, including this District.

28.     As a part of Signify's global manufacturing and distribution network, Signify China also purposefully places infringing Signify products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users. For example, Signify China manufactures Signify products and makes applications with the Federal Communications Commission (FCC), as the responsible party, for the use and operations of those products in the U.S.     See     Declaration     of     Conformity,     FCC     ID.IO, https://fccid.io/2AGBW9290022267AX/Letter/Declaration-of-Conformity-FCC-subpart-15B-5266304 (last visited June 8, 2021) (declaration of conformity showing that Signify China appears as the "manufacturer/importer/entity (located in the USA) [that] is responsible for this declaration"). Furthermore, Signify China is the applicant (Grantee Code 2AGBW) listed on at least 110 Signify products seeking FCC approval for use and sale in the U.S. *See Signify (China) Investment Co., Ltd. FCC Wireless Applications*, FCC ID.IO, https://fccid.io/2AGBW (last visited June 8, 2021). Via at least its own activities, Signify China should reasonably know and anticipate that those Signify products will be imported, distributed, offered for sale, sold, and used via Signify's established distribution channels in Texas and in this District. Therefore, Signify China, alone and in concert with, its parent entity Defendant Signify NV, its U.S. based Signify subsidiaries, and other members of the Signify group of consolidated subsidiaries has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. Through its own conduct and through direction and control of its subsidiaries or control by other Defendants Signify NV, Signify HK, Signify Netherlands, and Signify Poland, Signify China has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum

contacts with Texas such that personal jurisdiction over Signify China would not offend traditional notions of fair play and substantial justice.

29.    In the alternative, the Court has personal jurisdiction over Signify China under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Signify China is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Signify China is consistent with the U.S. Constitution.

30.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Signify China is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

### Defendant Signify HK

31.    On information and belief, Defendant Signify HK is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State, including: (A) based on at least part of its own infringing activities or those activities committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Signify HK together with parent Defendant Signify NV, Defendants Signify China, Signify Netherlands, and Signify Poland and other subsidiaries of the

Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting manufacture, import, distribute, offer for sale, sell, and induce infringing use of Signify products to distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users.

32.    This Court has personal jurisdiction over Signify HK, directly and/or indirectly via the activities of Signify HK's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including parent Defendant Signify NV, Defendants Signify China, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting. Alone and in concert with or via direction and control of or by at least these entities, Signify HK has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, Signify HK operates within a global network of companies, affiliates and offices for the manufacture, distribution, importation, and sale of Signify products that includes subsidiaries in the Signify group, distributors, retail stores, dealers, resellers, and professional installers operating in Texas, including this District.

33.    As a part of Signify's global manufacturing and distribution network, Signify HK also purposefully places infringing Signify products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users. For example, Signify HK ships into the United States Signify products directly to subsidiary Signify NA, among other subsidiaries and/or third-party distributors. *See Data Shipments of Importer SIGNIFY NORTH AMERICA CORP Export by Signify Hong Kong Limited,* US IMPORTS,

https://usimports.info/importer-signify-north-america-corp/data-3.html      (indicating      1348

shipments between Signify North America Corp. and Signify Hong Kong Limited) (last visited

June 8, 2021). Via at least its own activities, Signify HK should reasonably know and anticipate

that those Signify products will be imported, distributed, offered for sale, sold, and used via

Signify's established distribution channels in Texas and in this District. Therefore, Signify HK,

alone and in concert with, its parent entity Defendant Signify NV, its U.S. based Signify

subsidiaries, and other members of the Signify group of consolidated subsidiaries has purposefully

directed its activities at Texas, and should reasonably anticipate being brought in this Court, at

least on this basis. Through its own conduct and through direction and control of its subsidiaries

or control by other Defendants Signify NV, Signify China, Signify Netherlands, and Signify

Poland, Signify HK has committed acts of direct and/or indirect patent infringement within Texas,

and elsewhere within the United States, giving rise to this action and/or has established minimum

contacts with Texas such that personal jurisdiction over Signify HK would not offend traditional

notions of fair play and substantial justice.

34.    In the alternative, the Court has personal jurisdiction over Signify HK under Federal

Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise

under federal law, Signify HK is not subject to the jurisdiction of the courts of general jurisdiction

of any state, and exercising jurisdiction over Signify HK is consistent with the U.S. Constitution.

35.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other

things, Signify HK is not a resident in the United States, and thus may be sued in any judicial

district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

### *Defendant Signify Netherlands*

36.    On information and belief, Defendant Signify Netherlands is subject to this Court's

specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm

Statute, due at least to its substantial business in this State, including: (A) based on at least part of its own infringing activities or those activities committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Signify Netherlands together with parent Defendant Signify NV, Defendants Signify China, Signify HK, and Signify Poland and other subsidiaries of the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting manufacture, import, distribute, offer for sale, sell, and induce infringing use of Signify products to distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users.

37.    This Court has personal jurisdiction over Signify Netherlands, directly and/or indirectly via the activities of Signify Netherlands's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including parent Defendant Signify NV, Defendants Signify China, Signify HK, and Signify Poland and other subsidiaries in the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting. Alone and in concert with or via direction and control of or by at least these entities, Signify Netherlands has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, Signify Netherlands operates within a global network of companies, affiliates and offices for the

manufacture, distribution, importation, and sale of Signify products that includes subsidiaries in the Signify group, distributors, retail stores, dealers, resellers, and professional installers operating in Texas, including this District.

38.    As a part of Signify's global manufacturing and distribution network, Signify Netherlands also purposefully places infringing Signify products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users. For example, Signify Netherlands imports into the United States Signify products directly to subsidiary Signify NA, among other subsidiaries and/or third-party distributors. *See Data Shipments of Importer SIGNIFY NORTH AMERICA CORP Export by Signify Netherlands B V High Tech Campus,* US IMPORTS*,* https://usimports.info/importer-signify-north-america-corp/exporter-signify-netherlands-b-v-high-tech-campus/data-1.html (indicating at least 281 shipments between Signify North America Corp. and Signify Netherlands BV) (last visited June 8, 2021). Via at least its own activities, Signify Netherlands should reasonably know and anticipate that those Signify products will be imported, distributed, offered for sale, sold, and used via Signify's established distribution channels in Texas and in this District. Therefore, Signify Netherlands, alone and in concert with, its parent entity Defendant Signify NV, its U.S. based Signify subsidiaries, and other members of the Signify group of consolidated subsidiaries has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. Through its own conduct and through direction and control of its subsidiaries or control by other Defendants Signify NV, Signify China, Signify HK, and Signify Poland, Signify Netherlands has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas

such that personal jurisdiction over Signify Netherlands would not offend traditional notions of fair play and substantial justice.

39.    In the alternative, the Court has personal jurisdiction over Signify Netherlands under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Signify Netherlands is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Signify Netherlands is consistent with the U.S. Constitution.

40.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Signify Netherlands is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

### *Defendant Signify Poland*

41.    On information and belief, Defendant Signify Poland is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State, including: (A) based on at least part of its own infringing activities or those activities committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Signify Poland together with parent Defendant Signify NV, Defendants Signify China, Signify HK, and Signify Netherlands and other subsidiaries of the

Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting manufacture, import, distribute, offer for sale, sell, and induce infringing use of Signify products to distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users.

42.     This Court has personal jurisdiction over Signify Poland, directly and/or indirectly via the activities of Signify Poland's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including parent Defendant Signify NV, Defendants Signify China, Signify HK, and Signify Netherlands and other subsidiaries in the Signify group, including Signify NA, Genlyte, WiZ, and Cooper Lighting. Alone and in concert with or via direction and control of or by at least these entities, Signify Poland has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas. For example, Signify Poland operates within a global network of companies, affiliates and offices for the manufacture, distribution, importation, and sale of Signify products that includes subsidiaries in the Signify group, distributors, retail stores, dealers, resellers, and professional installers operating in Texas, including this District.

43.     As a part of Signify's global manufacturing and distribution network, Signify Poland also purposefully places infringing Signify products in established distribution channels in the stream of commerce, including in Texas, via distribution partners, retailers (including national retailers), resellers, dealers, service providers, consumers, and other users. For example, Signify Poland manufactures and imports into the United States Signify products directly to subsidiary Signify NA, among other subsidiaries and/or third-party distributors. *See US Consignee Data Shipments of Importer - SIGNIFY NORTH AMERICA CORP*, US IMPORTS,

https://usimports.info/importer-signify-north-america-corp/data-3.html (indicating at least 650 shipments between Signify North America Corp. and Signify Poland SP Zoo) (last visited June 8, 2021). Via at least its own activities, Signify Poland should reasonably know and anticipate that those Signify products will be imported, distributed, offered for sale, sold, and used via Signify's established distribution channels in Texas and in this District. Therefore, Signify Poland, alone and in concert with, its parent entity Defendant Signify NV, its U.S. based Signify subsidiaries, and other members of the Signify group of consolidated subsidiaries has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. Through its own conduct and through direction and control of its subsidiaries or control by other Defendants Signify NV, Signify China, Signify HK, and Signify Netherlands, Signify Poland has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Signify Poland would not offend traditional notions of fair play and substantial justice.

44.   In the alternative, the Court has personal jurisdiction over Signify Poland under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Signify Poland is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Signify Poland is consistent with the U.S. Constitution.

45.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Signify Poland is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

46.    On information and belief, Defendants Signify NV, Signify China, Signify HK, Signify Netherlands, and Signify Poland have significant ties to, and presence in, the State of Texas and this District, making venue in this judicial district both proper and convenient for this action.

## THE ASSERTED PATENTS AND TECHNOLOGY

47.    The Asserted Patents cover various aspects of monitoring, detecting intrusions, and encrypting and decrypting wireless communications networks, including networks created between Defendants' smart home and IoT devices, including connected wireless lighting devices.

48.    The '117 patent involves detecting intrusions into a wireless communication network by monitoring transmissions among nodes of the network. The disclosed intrusion detection techniques of the '117 patent include monitoring, by a policing node, transmissions among a plurality of nodes of a mobile ad-hoc network (MANET). Such nodes of the MANET intermittently operate in a contention-free mode during a contention-free period. The policing node detects intrusions by monitoring the transmissions between the MANET nodes to detect contention-free mode operation outside of a contention-free period. Based on such a detection, an intrusion alert may be generated.

49.    The '678 patent involves detecting intrusions into a wireless local or metropolitan area network. The disclosed intrusion detection techniques include monitoring transmission between stations of the network, where each station has its own media access layer (MAC) address. The monitoring is done to detect failed attempts to authenticate the MAC addresses. Upon detection of a number of failed attempts to authenticate, an intrusion alert may be generated.

50.    The '961 patent involves allocating channels in mobile ad hoc networks. The patent describes dynamic channel allocation in such networks to efficiently make use of a plurality of channels. In such networks, wireless communication links connect wireless mobile nodes over multiple separate channels at different frequencies. The disclosed techniques for channel allocation

include monitoring link performance on one channel based on a quality of service (QoS) threshold. When the monitored link performance falls below the QoS threshold, other available separate channels are scouted. Scouting may include switching to a second separate channel at a different frequency. A channel activity query may be broadcast to determine link performance of the second separate channel. Replies to the query are processed to determine the link performance, and channel activity may be updated for each separate channel based on the replies.

51.    The '572 patent involves providing secure wireless local area networks (LAN). A device for securing such a LAN may include a housing with a wireless transceiver carried by the housing. A medium access controller (MAC) also carried by the housing. A cryptography circuit may be connected to the MAC controller and the transceiver. The circuit may encrypt both address and data information by at least adding a plurality of encrypting bits to be transmitted. And the cryptography circuit may decrypt both address and data information upon reception.

52.    Upon information and belief, a significant portion of Defendants' operating revenue is derived from the manufacture and sale of smart home and internet of things (IoT), including wirelessly connected lighting devices, which are manufactured in the U.S. and/or abroad, imported into the United States, distributed to resellers, dealers, retailers, and third-party manufacturers, and ultimately sold to and used by U.S. consumers. For example, the Signify Defendants utilize their subsidiaries, including Signify NA, Genlyte, WiZ, and Cooper Lighting, distributors, customers, partners, and retailers to provide smart home and internet of things (IoT), including wirelessly connected lighting devices, to consumers. Signify's revenue for products accused herein of infringing the Asserted Patents is substantially represented by its LED and Home divisions which now reside in Signify's Digital Products division. *See Annual Report 2019*, SIGNIFY, at 25 ("In LED electronics, the aim is to lead the transition to smart lighting"); *Id*. at 27 (Discussing sales

and innovation for Philips Hue brand under the "Home" section of the report). Signify reported that, in 2019, its LED division had 1.891 billion euros in sales, accounting for 12.7% of Signify's total sales. *Id*. at 25. Signify also reported that, in 2019, its Home division had 521 million euros in sales, accounting for 3.8% of Signify's total sales. *Id*. at 27. Signify states that its strategy in both divisions is to increase sales of its wireless lighting devices. *See id*. at 25 ("LED will drive growth in LED electronics through the transition to smart lighting"); *id*. at 27 ("The consumer lighting market is expected to benefit from…the increasing adoption of connected home lighting systems.").

53.     In 2020, worldwide sales, including from the U.S., of Signify's Digital Products were €2.29 billion EUR (about $2.79 billion U.S. dollars). *Id*. at 25. 80% of Signify's sales, worldwide, were LED-based sales. *See id*. at 5. Signify derived 37% of its worldwide sales from the Americas, including the U.S.

54.     Signify's smart home and internet of things (IoT), including wirelessly connected lighting devices, use IEEE 802.11 and ZigBee protocols to enable communication between Signify's devices. *See, e.g.*, *Smart Wi-Fi LED lighting*, PHILIPS, https://www.usa.lighting.philips.com/consumer/smart-wifi-led (last visited Jan. 25, 2021); *How Philips Hue Works*, PHILIPS HUE, https://www.philips-hue.com/en-us/explore-hue/how-it-works#get-started (last visited Jan. 25, 2021) ("Adding a Hue Bridge activates the built-in Zigbee network").

55.   The Asserted Patents cover wireless communication methods that are incorporated into IEEE 802.11 and ZigBee protocols and the products that utilize them, Signify's wireless lighting devices sold under at least the Signify, Philips, WiZ, Cooper Lighting brands (and sub-brands), their components, accessories, and processes related to the same (referred to herein as the "Accused Products"). For example, Signify's Philips Lighting brand products are Wi-Fi compliant, and utilize IEEE 802.11 protocols. *See, e.g.*, *Smart Wi-Fi LED lighting*, PHILIPS, *supra*. Examples of Wi-Fi connected Phillips Lighting products are shown below:





Source: https://www.usa.lighting.philips.com/consumer/choose-a-bulb/products#filters =SMARTLIGHTING_
BULB_SU&sliders=&support=&price=&priceBoxes=&page=&layout=.

      56.    Further, products sold by Signify's subsidiaries WiZ and Cooper Lighting are also

Wi-Fi compliant and utilize IEEE 802.11 protocols:



Source: https://www.wizconnected.com/en-US/



Source: https://www.wizconnected.com/en-US/innovation/.

WiZ is proud to announce that it has been acquired by Signify (formerly Philips Lighting), the world leader in lighting for professionals and consumers, and connected lights. WiZ Connected will continue to operate as an autonomous entity, selling its Wi-Fi-based connected products under its own brand name and licensing its open platform technology to other electrical and lighting vendors via co-labelling.

Source: https://www.wizconnected.com/en-US/about-wiz/.

57.   Through WiZ, Signify sells Wi-Fi compliant wireless lighting products that utilize

IEEE 802.11 protocols. Examples of Wi-Fi connected WiZ products are shown below:



Source: https://www.wizconnected.com/en-US/consumer/products/.

58.   Signify offers the WiZ mobile application for controlling Wi-Fi-enabled Signify products. The WiZ application can control Signify's Phillips Lighting brand products as well as Signify's WiZ brand products over Wi-Fi:



Source: https://www.wizconnected.com/en-US/consumer/technology/



Source: https://www.wizconnected.com/en-US/consumer/app/



Source: https://www.usa.lighting.philips.com/consumer/smart-wifi-led.

59.    The Signify Defendants also offer via subsidiary Cooper Lighting in its line of smart

home products Wi-Fi compliant products, such as the Internet access bridge product shown below:



Source: https://www.cooperlighting.com/global/brands/halo-home/939000/halo-home-smart-internet-access-bridge-hwb#What_do_the_LED_indicators_on_the_HALO_Home_Bridge_mean

60.   Signify also offers BrightSites smart poles—Wi-Fi compliant poles for use in providing Wi-Fi infrastructure and broadband connectivity in cities.





Source: https://www.signify.com/global/innovation/brightsites.

61.   IEEE 802.11 is a wireless communication standard covered by the Asserted Patents and utilized by certain Accused Products. The IEEE 802.11 standard defines a wireless local area network (WLAN) including multiple mobile nodes. Below is an excerpt from the IEEE which discusses a basic overview of the standard, including its use in wireless connectivity.

## 1. Overview

### 1.1 Scope

The scope of this standard is to define one medium access control (MAC) and several physical layer (PHY) specifications for wireless connectivity for fixed, portable, and moving stations (STAs) within a local area.

### 1.2 Purpose

The purpose of this standard is to provide wireless connectivity to automatic machinery, equipment, or STAs that require rapid deployment, which may be portable or hand-held, or which may be mounted on moving vehicles within a local area. This standard also offers regulatory bodies a means of standardizing access to one or more frequency bands for the purpose of local area communication.

Specifically, this standard

—   Describes the functions and services required by an IEEE 802.11™-compliant device to operate within ad hoc and infrastructure networks as well as the aspects of STA mobility (transition) within those networks.

—   Defines the MAC procedures to support the asynchronous MAC service data unit (MSDU) delivery services.

—   Defines several PHY signaling techniques and interface functions that are controlled by the IEEE 802.11 MAC.

> — Defines the MAC procedures to support local area network (LAN) applications with quality of service (QoS) requirements, including the transport of voice, audio, and video.

*IEEE Std. 802.11^{TM}*, 2007 revision at 49-50, IEEE, https://www.iith.ac.in/~tbr/teaching/docs/802.11-2007.pdf (June 12, 2007).

62.    The IEEE 802.11 standard also includes security features such as encrypting data information within a network and defending the network against attacks. These features, described in the below excerpts, are utilized by certain Accused Products in order to protect devices within the network.

### 8.3.2.3 TKIP MIC

Flaws in the IEEE 802.11 WEP design cause it to fail to meet its goal of protecting data traffic content from casual eavesdroppers. Among the most significant WEP flaws is the lack of a mechanism to defeat message forgeries and other active attacks. To defend against active attacks, TKIP includes a MIC, named Michael. This MIC offers only weak defenses against message forgeries, but it constitutes the best that can be achieved with the majority of legacy hardware. TKIP uses different MIC keys depending on the direction of the transfer as described in 8.6.1 and 8.6.2.

Annex H contains an implementation of the TKIP MIC. It also provides test vectors for the MIC.

#### 8.3.2.3.1 Motivation for the TKIP MIC

Before defining the details of the MIC, it is useful to review the context in which this mechanism operates. Active attacks enabled by the original WEP design include the following:

— Bit-flipping attacks
— Data (payload) truncation, concatenation, and splicing
— Fragmentation attacks
— Iterative guessing attacks against the key
— Redirection by modifying the MPDU DA or RA field
— Impersonation attacks by modifying the MPDU SA or TA field

The MIC makes it more difficult for any of these attacks to succeed.

All of these attacks remain at the MPDU level with the TKIP MIC. The MIC, however, applies to the MSDU, so it blocks successful MPDU-level attacks. TKIP applies the MIC to the MSDU at the transmitter and verifies it at the MSDU level at the receiver. If a MIC check fails at the MSDU level, the implementation shall discard the MSDU and invoke countermeasures (see 8.3.2.4).

*Id.* at 217.



**8.3.3.3 CCMP cryptographic encapsulation**

The CCMP cryptographic encapsulation process is depicted in Figure 8-16.

**Figure 8-16—CCMP encapsulation block diagram**

CCMP encrypts the payload of a plaintext MPDU and encapsulates the resulting cipher text using the following steps:

a) Increment the PN, to obtain a fresh PN for each MPDU, so that the PN never repeats for the same temporal key. Note that retransmitted MPDUs are not modified on retransmission.

b) Use the fields in the MPDU header to construct the additional authentication data (AAD) for CCM. The CCM algorithm provides integrity protection for the fields included in the AAD. MPDU header fields that may change when retransmitted are muted by being masked to 0 when calculating the AAD.

c) Construct the CCM Nonce block from the PN, A2, and the Priority field of the MPDU where A2 is MPDU Address 2.

d) Place the new PN and the key identifier into the 8-octet CCMP header.

e) Use the temporal key, AAD, nonce, and MPDU data to form the cipher text and MIC. This step is known as CCM originator processing.

f) Form the encrypted MPDU by combining the original MPDU header, the CCMP header, the encrypted data and MIC, as described in 8.3.3.2.

*Id.* at 229.

63.   Further, Signify's Philips Hue products and other wireless lighting products utilize ZigBee protocols. *See, How Philips Hue Works*, PHILIPS HUE, *supra*. The Accused Products include at least Signify's Philips Hue brand of devices. Examples of Philips Hue devices are shown below:



Source: https://www.philips-hue.com/en-us/products/all-products#page=1



Source: https://www.philips-hue.com/en-us/explore-hue/how-it-works#get-started

64.    Signify's Philips Hue products utilize ZigBee protocols to communicate across a wireless network composed of various Philips Hue products, such as the Philips Hue Bridge and Philips Hue lights. Philips Hue products can be controlled via the Philips Hue mobile application:





Source: https://www.philips-hue.com/en-us/explore-hue/how-it-works#get-started

65.   Additionally, Signify's Interact brand of products also utilize ZigBee protocols. Signify's Interact products include various wireless lighting products connected to each other and the Interact Pro gateway product. Signify also offers the Interact Pro mobile app for controlling Interact products.

> The Interact Pro software and gateway works seamlessly with Interact Ready LED luminaires, lamps and sensors from Philips to create a connected lighting infrastructure that offers installers a secure transition to connected lighting. Data generated from projects can be used for service contracts based alerts on light failures, optimized energy usage and light schemes.

Source: https://www.interact-lighting.com/en-in/what-is-possible/interact-pro.



Source: https://www.lighting.philips.com/main/products/interact-ready.



Source: https://www.interact-lighting.com/en-in/what-is-possible/interact-pro/gateway.



Source: https://images.philips.com/is/content/PhilipsConsumer/PDFDownloads/Global/PDFs/ODLI06062018_en_AA_Interact_Ready_RPRQ_brochure_A4.pdf, p. 5

66.    ZigBee protocols, which are covered by the Asserted Patents and utilized by certain

Accused Products, are based on the IEEE 802.15.4 standard for wireless network communication.

Below is an excerpt from the technical specification for ZigBee protocols describing the basic

architecture and standards that enable wireless network communication.

## 1.1    Protocol Description

The ZigBee Alliance has developed a very low-cost, very low-power-consumption, two-way, wireless communications standard. Solutions adopting the ZigBee standard will be embedded in consumer electronics, home and building automation, industrial controls, PC peripherals, medical sensor applications, toys, and games.

### 1.1.3    Stack Architecture

The ZigBee stack architecture is made up of a set of blocks called layers. Each layer performs a specific set of services for the layer above. A data entity provides a data transmission service and a management entity provides all other services. Each service entity exposes an interface to the upper layer through a service access point (SAP), and each SAP supports a number of service primitives to achieve the required functionality.

The IEEE 802.15.4 standard defines the two lower layers: the physical (PHY) layer and the medium access control (MAC) sub-layer. The ZigBee Alliance builds on this foundation by providing the network (NWK) layer and the framework for the application layer. The application layer framework consists of the application support sub-layer (APS) and the ZigBee device objects (ZDO). Manufacturer-defined application objects use the framework and share APS and security services with the ZDO.

The PHY layer operates in two separate frequency ranges: 868/915 MHz and 2.4 GHz. The lower frequency PHY layer covers both the 868 MHz European band and the 915 MHz band, used in countries such as the United States and Australia. The higher frequency PHY layer is used virtually worldwide. A complete description of the PHY layers can be found in [B1].

*ZigBee Specification*, revision r21 at 1, THE ZIGBEE ALLIANCE, https://zigbeealliance.org/wp-content/uploads/2019/11/docs-05-3474-21-0csg-zigbee-specification.pdf (August 5, 2015).

67.    The IEEE 802.15.4 standard based mobile ad-hoc network, utilized by the Accused

Products, is a type of Low-Rate Wireless Personal Area Network (LR-WPAN) that allows

transmission of data between plurality of network nodes. The types of nodes include an FFD–full-

function device (functioning as a network coordinator node) and an RFD–reduced function device

(node that associates itself with the FFD).



**IEEE STANDARDS ASSOCIATION**

**IEEE Standard for
Local and metropolitan area networks—**

**Part 15.4: Low-Rate Wireless Personal Area
Networks (LR-WPANs)**

**4. General description**

**4.1 General**

An LR-WPAN is a simple, low-cost communication network that allows wireless connectivity in
applications with limited power and relaxed throughput requirements. The main objectives of an LR-WPAN
are ease of installation, reliable data transfer, extremely low cost, and a reasonable battery life, while
maintaining a simple and flexible protocol.

Two different device types can participate in an IEEE 802.15.4 network: a full-function device (FFD) and a
reduced-function device (RFD). An FFD is a device that is capable of serving as a personal area network
(PAN) coordinator or a coordinator. An RFD is a device that is not capable of serving as either a PAN
coordinator or a coordinator. An RFD is intended for applications that are extremely simple, such as a light
switch or a passive infrared sensor; it does not have the need to send large amounts of data and only
associates with a single FFD at a time. Consequently, the RFD can be implemented using minimal resources
and memory capacity.

**4.2 Components of the IEEE 802.15.4 WPAN**

A system conforming to this standard consists of several components. The most basic is the device. Two or
more devices communicating on the same physical channel constitute a WPAN. However, this WPAN
includes at least one FFD, which operates as the PAN coordinator.

*Page 8, http://ecee.colorado.edu/~liue/teaching/comm_standards/2015S_zigbee/802.15.4-2011.pdf*

68.    By utilizing IEEE 802.11 and/or ZigBee protocols, the Accused Products perform
methods for communication, routing, and organizing network nodes within wireless
communications networks that are covered by the Asserted Patents. Each respective Count below
describes how the Accused Products infringe on specific claims of the Asserted Patents.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 7,082,117)

69.    Plaintiff incorporates paragraphs 1 through 68 herein by reference.

70.     Plaintiff is the assignee of the '117 patent, entitled "Mobile ad-hoc network with intrusion detection features and related methods," with ownership of all substantial rights in the '117 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

71.     The '117 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '117 patent issued from U.S. Patent Application No. 10/401,004.

72.     The Signify Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '117 patent in this judicial district and elsewhere in Texas and the United States.

73.     On information and belief, the Signify Defendants design, develop, manufacture, assemble, and markets smart home, IoT connected devices, including wirelessly connected lighting devices configured to utilize IEEE 802.11 and/or ZigBee protocols such as the Accused Products (*see Smart Wi-Fi LED lighting*, PHILIPS, *supra*; *How Philips Hue Works*, PHILIPS HUE, *supra*), including via Signify's subsidiaries, such as Signify NA, Genlyte, WiZ, and Cooper Lighting, partners, distributors, retailers, customers, and consumers.

74.     Defendants each directly infringe the '117 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the '117 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, each Defendant sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused

Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '117 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (denying summary judgment and allowing presentation to jury as to "whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers … constitute an infringing sale under § 271(a)").

75.    Furthermore, Defendant Signify NV directly infringes the '117 patent through its direct involvement in the activities of other Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, including by Defendants' selling and offering for sale the Accused Products directly to other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and importing the Accused Products into the United States for those entities. On information and belief, subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, conduct activities in the U.S. that constitute direct infringement of the '117 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. Each Defendant is vicariously liable for this infringing conduct of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting (under both the alter ego and agency theories) because, as an example and on information and belief, parent company Signify NV, Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland, and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, are essentially the same company, and the Signify Defendants have the right and ability to control the infringing acts of subsidiaries in the

Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and the Signify Defendants receive a direct financial benefit from the infringement of those subsidiaries.

76.   For example, the Signify Defendants infringe claim 24 of the '117 patent via the Accused Products such as Philips Hue Bridge, Philips Hue lighting (including bulbs, lightstrips, recessed lights, ceiling lights, spot lights, path lights, and pendant lights), Philips Interact Pro Gateway, Philips CoreLine Downlight, Philips CoreLine Panel, Philips CoreLine Recessed, Philips CoreLine SlimDownlight, Philips CoreLine Surface-mounted, Philips CoreLine Waterproof, Philips MasterConnect LEDtub EM/Mains T8, Philips OCC Sensor IA CM IP42 WH, and Philips UID8450/10 ZGP Switch Dim 2B, which utilize ZigBee protocols.

77.   The Accused Products comprise a "mobile ad-hoc network (MANET)" as in claim 24. Each of the Accused Products utilizes ZigBee protocols. ZigBee protocols are based on the IEEE 802.15.4 standard and involve communication between two or more devices on a wireless channel. *See* THE ZIGBEE ALLIANCE, *supra*.

78.   The Accused Products comprise a plurality of nodes for transmitting data therebetween, said plurality of nodes intermittently operating in a contention-free mode during contention-free periods (CFPs) and in a contention mode outside CFPs. For example, by utilizing ZigBee protocols, the Accused Products establish a LR-WPAN network that transmits data among multiple devices (i.e., a plurality of nodes) and allows use of a superframe structure. The superframe includes a CFP and a contention access period (CAP) (i.e., a contention mode outside CFPs).

79.   The Accused Products comprise "a policing node for detecting intrusions into the MANET by monitoring transmissions along said plurality of nodes to detect contention-free mode operation outside of a CFP." For example, by utilizing ZigBee protocols, the Accused

Products include a PAN coordinator (i.e., a policing node) which monitors if a device's request to add a new GTS (e.g., to an existing CFS in the superframe) would result in reduction of the minimum CAP length. A newly requested GTS lies outside an existing CFP and will be used for transmission by the requesting device.

80.    The Accused Products comprise "a policing node for detecting intrusions into the MANET by…generating an intrusion alert based upon detecting contention-free mode operation outside a CFP." For example, the PAN coordinator preserves the minimum CAP length and takes preventative action (i.e., generates an intrusion alert) if the minimum CAP is not satisfied. This preventative action can include deallocating one or more of the GTSs.

81.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

82.    At a minimum, the Signify Defendants have known of the '117 patent at least as early as the filing date of this complaint. In addition, the Signify Defendants have known about the '117 patent since at least March 12, 2018, when the Signify Defendants (under their previous name as Philips Lighting) received a letter regarding infringement of the patent portfolio, including the '117 patent, related to wireless communication network products, which specifically referenced the infringing use of ZigBee standards and included a list of Signify's infringing products.

83.    On information and belief, since at least the above-mentioned date when the Signify Defendants were on notice of their infringement, the Signify Defendants have actively induced, under U.S.C. § 271(b), their distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '117 patent to directly infringe one or more claims of the '117 patent

by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, the Signify Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '117 patent. Upon information and belief, the Signify Defendants intend to cause, and have taken affirmative steps to induce, infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing IEEE 802.11 and/or ZigBee protocol features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, *Smart mood lighting*, PHILIPS HUE, https://www.philips-hue.com/en-us/explore-hue/propositions/personal-mood-lighting?origin=8rOWCaZO&pcrid=438137758935|mckv| s8rOWCaZO_dc|plid||slid||pgrid|86117087888|ptaid|aud-517506575422:kwd-44175898474 |product||&gclid=EAIaIQobChMIuajvo7bC7gIVHCmzAB3gxwGZEAAYASAAEgK5yvD_Bw E (last visited January 29, 2021) ("Control up to 10 lights in a single room with a Bluetooth-enabled LED bulb and the Hue Bluetooth app"); *Smart Lighting For Your Daily Living*, WIZ, https://www.wizconnected.com/en-US/consumer/, (last visited January 29, 2021) ("Take Absolute Control: Get your Wi-Fi lights to do what you want and more").

84.    On information and belief, despite having knowledge of the '117 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '117 patent, the Signify Defendants have nevertheless continued their infringing conduct and disregarded an

objectively high likelihood of infringement. The Signify Defendants' infringing activities relative to the '117 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

85.    Stingray has been damaged as a result of the Signify Defendants' infringing conduct described in this Count. The Signify Defendants are thus jointly and severally liable to Stingray in an amount that adequately compensates Stingray for the Signify Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 7,224,678)

86.    Plaintiff incorporates paragraphs 1 through 85 herein by reference.

87.    Plaintiff is the assignee of the '678 patent, entitled "Wireless local or metropolitan area network with intrusion detection features and related methods," with ownership of all substantial rights in the '678 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

88.    The '678 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '678 patent issued from U.S. Patent Application No. 10/217,042.

89.    The Signify Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '678 patent in this judicial district and elsewhere in Texas and the United States.

90.    Upon information and belief, the Signify Defendants design, develop, manufacture, assemble, and market wireless lighting devices configured to comply with IEEE 802.11 standards. *See Smart Wi-Fi LED lighting*, PHILIPS, *supra*.

91.    Defendants each directly infringe the '678 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the '678 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, each Defendant sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '678 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (denying summary judgment and allowing presentation to jury as to "whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers … constitute an infringing sale under § 271(a)").

92.    Furthermore, Defendant Signify NV directly infringes the '678 patent through its direct involvement in the activities of other Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, including by Defendants' selling and offering for sale the Accused Products directly to other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and importing the Accused Products into the United States

for those entities. On information and belief, subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, conduct activities in the U.S. that constitute direct infringement of the '678 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. Each Defendant is vicariously liable for this infringing conduct of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting (under both the alter ego and agency theories) because, as an example and on information and belief, parent company Signify NV, Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland, and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, are essentially the same company, and the Signify Defendants have the right and ability to control the infringing acts of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and the Signify Defendants receive a direct financial benefit from the infringement of those subsidiaries.

93.    For example, the Signify Defendants infringe claim 51 of the '678 patent via the Accused Products such as Philips Lighting Smart Wi-Fi LED bulbs, WiZ bulbs (including bulbs, candle bulbs, Reflector & Globe bulbs, and filament bulbs), WiZ Smart Plugs, WiZ LED Strips, WiZ Motion Sensor, WiZmote, WiZ Smart Dimmer, BrightSite smart poles, and Cooper Lighting products which utilize IEEE 802.11 protocols.

94.    The Accused Products perform the "intrusion detection method for a wireless local or metropolitan area network comprising a plurality of stations" of claim 51. Each of the Accused Products complies with IEEE 802.11 standards. IEEE 802.11 is a standard for wireless connectivity for fixed, portable, and moving stations ("STAs") within a mobile area. *See* IEEE, *supra*.

95.    The Accused Products transmit data between the plurality of stations using a media

access layer (MAC), each of the stations having a respective MAC address associated therewith. For example, by complying with IEEE 802.11 standards, the Accused Products transmit data between other STAs in their network in the form of MPDUs (medium access control (MAC) protocol data units). An MPDU comprises a sequence of ordered fields; one such field includes the MAC address of the STA.

96.     The Accused Products monitor transmissions among the plurality of stations to detect failed attempts to authenticate MAC addresses. For example, an 802.11-compliant device with a robust security network association (RSNA) can contains the Temporal Key Integrity Protocol (TKIP) for data confidentiality and integrity. In TKIP, an MSDU transmitter STA calculates and monitors message integrity code (MIC) using the MAC addresses. MSDUs with invalid MICs are discarded (i.e., failed attempts).

97.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

98.     At a minimum, the Signify Defendants have known of the '678 patent at least as early as the filing date of this complaint. In addition, the Signify Defendants have known about the '678 patent since at least March 12, 2018, when the Signify Defendants (under their previous name as Philips Lighting) received a letter regarding infringement of the patent portfolio, including the '678 patent, related to wireless communication network products, which specifically referenced the infringing use of IEEE 802 standards and included a list of Signify's infringing products.

99.     Upon information and belief, since at least the above-mentioned date when the Signify Defendants were on notice of its infringement, the Signify Defendants have actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or

consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '678 patent to directly infringe one or more claims of the '678 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Signify does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '678 patent. Upon information and belief, the Signify Defendants intend to cause, and has taken affirmative steps to induce, infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing IEEE 802.11 protocol features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, *Smart Lighting For Your Daily Living*, WIZ, https://www.wizconnected.com/en-US/consumer/, (last visited January 29, 2021) ("Take Absolute Control: Get your Wi-Fi lights to do what you want and more").

100. Upon information and belief, despite having knowledge of the '678 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '678 patent, the Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. The Signify Defendants' infringing activities relative to the '678 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct

beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

101.  Stingray has been damaged as a result of the Signify Defendants' infringing conduct described in this Count. The Signify Defendants are thus jointly and severally liable to Stingray in an amount that adequately compensates Stingray for the Signify Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 7,440,572)

102.  Plaintiff incorporates paragraphs 1 through 101 herein by reference.

103.  Plaintiff is the assignee of the '572 patent, entitled "Secure wireless LAN device and associated methods," with ownership of all substantial rights in the '572 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

104.  The '572 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '572 patent issued from U.S. Patent Application No. 09/760,619.

105.  The Signify Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '572 patent in this judicial district and elsewhere in Texas and the United States.

106.  Upon information and belief, the Signify Defendants design, develop, manufacture, assemble, and market wireless lighting devices configured to comply with IEEE 802.11 standards. *See Smart Wi-Fi LED lighting*, PHILIPS, *supra*.

107.  Defendants each directly infringe the '572 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the '572 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, each Defendant sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '572 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (denying summary judgment and allowing presentation to jury as to "whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers … constitute an infringing sale under § 271(a)").

108.  Furthermore, Defendant Signify NV directly infringes the '572 patent through its direct involvement in the activities of other Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, including by Defendants' selling and offering for sale the Accused Products directly to other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and importing the Accused Products into the United States for those entities. On information and belief, subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, conduct activities in the U.S. that constitute direct infringement of the '572 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling,

and/or importing those Accused Products. Each Defendant is vicariously liable for this infringing conduct of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting (under both the alter ego and agency theories) because, as an example and on information and belief, parent company Signify NV, Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland, and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, are essentially the same company, and the Signify Defendants have the right and ability to control the infringing acts of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and the Signify Defendants receive a direct financial benefit from the infringement of those subsidiaries.

109.  For example, the Signify Defendants infringe claim 1 of the '572 patent via the Accused Products such as Philips Lighting Smart Wi-Fi LED bulbs, WiZ bulbs (including bulbs, candle bulbs, Reflector & Globe bulbs, and filament bulbs), WiZ Smart Plugs, WiZ LED Strips, WiZ Motion Sensor, WiZmote, WiZ Smart Dimmer, Cooper Lighting's Wi-Fi enabled products, and BrightSite smart poles, which utilize IEEE 802.11 protocols.

110.  The Accused Products comprise a "secure wireless local area network (LAN) device" as in claim 1. Each of the Accused Products complies with IEEE 802.11 standards. IEEE 802.11 is a standard for wireless connectivity for fixed, portable, and moving stations ("STAs") within a mobile area. *See* IEEE, *supra*.

111.  The Accused Products comprise a housing, a wireless transceiver carried by said housing, and a medium access controller (MAC) carried by said housing. For example, by complying with IEEE 802.11 standards, the Accused Products each represent a station (STA) (i.e., a device with a housing) that contains a MAC and wireless physical layer (PHY) interface transceivers.

112.  The Accused Products comprise a cryptography circuit carried by said housing and connected to said MAC and said wireless transceiver for encrypting both address and data information for transmission by at least adding a plurality of encrypting bits to both the address and the data information, and for encrypting both the address and the data information upon reception. For example, an 802.11-compliant device with a robust security network association (RSNA) contains an enhanced data cryptographic encapsulation mechanism (i.e., a cryptography circuit) with two types of data confidentiality and integrity protocols: the mandatory Cipher-block Chaining Message authentication code Protocol (CCMP) and the optional Temporal Key Integrity Protocol (TKIP). CCMP encrypts both address and plaintext (i.e., data) information and adds temporal keys (i.e., encrypting bits) to both. TKIP likewise encrypts both address and plaintext information and adds MIC keys (i.e., encrypting bits) to both. Both protocols decrypt the information upon reception.

113.  The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

114.  Defendants further infringe the '572 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing IoT and smart home devices, their components, and/or products containing same, that are made by a process covered by the '572 patent. On information and belief, the infringing IoT and smart home devices, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

115.  Defendants further infringe based on the importation, sale, offer for sale, or use of the Accused Products that are made from a process covered by the '572 patent. To the extent that Plaintiff made reasonable efforts to determine whether the patented processes of the '572 patent

were used in the production of the Accused Products but was not able to so determine, the Accused Products should be presumed by this Court to have been so made, pursuant to 35 U.S.C. § 295.

116.  At a minimum, the Signify Defendants have known of the '572 patent at least as early as the filing date of this complaint. In addition, the Signify Defendants have known about the '572 patent since at least March 12, 2018, when the Signify Defendants (under their previous name as Philips Lighting) received a letter regarding infringement of the patent portfolio, including the '572 patent, related to wireless communication network products, which specifically referenced the infringing use of IEEE 802 standards and included a list of Signify's infringing products.

117.  On information and belief, since at least the above-mentioned date when the Signify Defendants were on notice of their infringement, the Signify Defendants have actively induced, under U.S.C. § 271(b), their distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '572 patent to directly infringe one or more claims of the '572 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, the Signify Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '572 patent. Upon information and belief, the Signify Defendants intend to cause, and have taken affirmative steps to induce, infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and

regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing IEEE 802.11 and/or ZigBee protocol features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, *Smart mood lighting*, Philips Hue, https://www.philips-hue.com/en-us/explore-hue/propositions/personal-mood-lighting?origin=8rOWCaZO&pcrid=438137758935|mckv|s8rOWCaZO_dc|plid||slid||pgrid|86572087888|ptaid|aud-517506575422:kwd-44175898474|product||&gclid=EAIaIQobChMIuajvo7bC7gIVHCmzAB3gxwGZEAAYASAAEgK5yvD_BwE (last visited January 29, 2021) ("Control up to 10 lights in a single room with a Bluetooth-enabled LED bulb and the Hue Bluetooth app"); *Smart Lighting For Your Daily Living*, WiZ, https://www.wizconnected.com/en-US/consumer/, (last visited January 29, 2021) ("Take Absolute Control: Get your Wi-Fi lights to do what you want and more").

118. On information and belief, despite having knowledge of the '572 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '572 patent, the Signify Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. The Signify Defendants' infringing activities relative to the '572 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

119. Stingray has been damaged as a result of the Signify Defendants' infringing conduct described in this Count. The Signify Defendants are thus jointly and severally liable to Stingray in an amount that adequately compensates Stingray for the Signify Defendants' infringements,

which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 7,616,961)

120.  Plaintiff incorporates paragraphs 1 through 119 herein by reference.

121.  Plaintiff is the assignee of the '961 patent, entitled "Allocating channels in a mobile ad hoc network," with ownership of all substantial rights in the '961 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

122.  The '961 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '961 patent issued from U.S. Patent Application No. 10/134,862.

123.  The Signify Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '961 patent in this judicial district and elsewhere in Texas and the United States.

124.  On information and belief, the Signify Defendants design, develop, manufacture, assemble, and market wireless lighting devices configured to utilize ZigBee protocols such as the Accused Products (*see How Philips Hue Works*, PHILIPS HUE, *supra*), including via Signify's subsidiaries, such as Signify NA, Genlyte, WiZ, and Cooper Lighting, partners, distributors, retailers, customers, and consumers.

125.  Defendants each directly infringe the '961 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the '961 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers,

subsidiaries, and/or consumers. Furthermore, on information and belief, each Defendant sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '961 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (denying summary judgment and allowing presentation to jury as to "whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers … constitute an infringing sale under § 271(a)").

126. Furthermore, Defendant Signify NV directly infringes the '961 patent through its direct involvement in the activities of other Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, including by Defendants' selling and offering for sale the Accused Products directly to other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and importing the Accused Products into the United States for those entities. On information and belief, subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, conduct activities in the U.S. that constitute direct infringement of the '961 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. Each Defendant is vicariously liable for this infringing conduct of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting (under both the alter ego and agency theories) because, as an example and on information and belief, parent company Signify NV, Defendants Signify China, Signify HK,

Signify Netherlands, and Signify Poland, and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, are essentially the same company, and the Signify Defendants have the right and ability to control the infringing acts of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and the Signify Defendants receive a direct financial benefit from the infringement of those subsidiaries.

127.  For example, the Signify Defendants infringe claim 24 of the '961 patent via the Accused Products such as Philips Hue Bridge, Philips Hue lighting (including bulbs, lightstrips, recessed lights, ceiling lights, spot lights, path lights, and pendant lights), Philips Interact Pro Gateway, Philips CoreLine Downlight, Philips CoreLine Panel, Philips CoreLine Recessed, Philips CoreLine SlimDownlight, Philips CoreLine Surface-mounted, Philips CoreLine Waterproof, Philips MasterConnect LEDtub EM/Mains T8, Philips OCC Sensor IA CM IP42 WH, and Philips UID8450/10 ZGP Switch Dim 2B, which utilize ZigBee protocols.

128.  The Accused Products implement the "method for dynamic channel allocation in a mobile ad hoc network comprising a plurality of wireless mobile nodes and a plurality of wireless communication links connecting the plurality of wireless mobile nodes together over a plurality of separate channels at different frequencies" of claim 1. Each of the Accused Products utilizes ZigBee protocols. ZigBee protocols are based on the IEEE 802.15.4 standard and involve communication between two or more devices on a wireless channel. *See* THE ZIGBEE ALLIANCE, *supra*.

129.  The Accused Products, at each node, monitor link performance on a first channel, link performance being based upon at least one quality of service (QoS) threshold. For example, by utilizing Zigbee protocols, each of the Accused Products is configured to monitor the performance of a channel in use based on its energy measurement (i.e., a QoS threshold).

130.  The Accused Products, at each node, scout one or more other available separate channels at different frequencies when the monitored link performance on the first channel falls below the QoS threshold by at least switching to a second separate channel at a different frequency, broadcasting a channel activity query to determine link performance for the second separate channel, and processing replies to the channel activity query to determine the link performance for the second separate channel. For example, by utilizing ZigBee protocols, each of the Accused Products can become the Network Channel Manager within its network, which enables it to receive (i.e., scout) network interference reports and change the channel (i.e., switch) when interference is detected (i.e., falling below the QoS threshold). The same command can scan and produce an interference report (i.e., broadcast channel activity and determine link performance) for the newly-switched channel.

131.  The Accused Products, at each node, update respective channel activity for the first and second separate channels at different frequencies based upon the processed replies. For example, by utilizing ZigBee protocols, the network manager of a local node like the Accused Products updates channel activity by discontinuing transmission on one channel and switching to a new channel.

132.  The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

133.  At a minimum, the Signify Defendants have known of the '961 patent at least as early as the filing date of this complaint. In addition, the Signify Defendants have known about the '961 patent since at least March 12, 2018, when the Signify Defendants (under their previous name as Philips Lighting) received a letter regarding infringement of the patent portfolio, including the '961 patent, related to wireless communication network products, which

specifically referenced the infringing use of ZigBee standards and included a list of Signify's infringing products.

134.  On information and belief, since at least the above-mentioned date when the Signify Defendants were on notice of their infringement, the Signify Defendants have actively induced, under U.S.C. § 271(b), their distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '961 patent to directly infringe one or more claims of the '961 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, the Signify Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '961 patent. Upon information and belief, the Signify Defendants intend to cause, and have taken affirmative steps to induce, infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing IEEE 802.11 and/or ZigBee protocol features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, *Smart mood lighting*, PHILIPS HUE, https://www.philips-hue.com/en-us/explore-hue/propositions/personal-mood-lighting?origin=8rOWCaZO&pcrid=438137758935|mckv|

s8rOWCaZO_dc|plid||slid||pgrid|86961087888|ptaid|aud-517506575422:kwd-44175898474

|product||&gclid=EAIaIQobChMIuajvo7bC7gIVHCmzAB3gxwGZEAAYASAAEgK5yvD_Bw

E (last visited January 29, 2021) ("Control up to 10 lights in a single room with a Bluetooth-enabled LED bulb and the Hue Bluetooth app"); *Smart Lighting For Your Daily Living*, WIZ, https://www.wizconnected.com/en-US/consumer/, (last visited January 29, 2021) ("Take Absolute Control: Get your Wi-Fi lights to do what you want and more").

135. On information and belief, despite having knowledge of the '961 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '961 patent, the Signify Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. The Signify Defendants' infringing activities relative to the '961 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

136. Stingray has been damaged as a result of the Signify Defendants' infringing conduct described in this Count. The Signify Defendants are thus jointly and severally liable to Stingray in an amount that adequately compensates Stingray for the Signify Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

137. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

138. Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and

necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

139.  Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

140.  Plaintiff requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

1.  A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

3.  A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.

Dated: June 14, 2021                    Respectfully submitted,

                                        */s/Jeffrey R. Bragalone by permission*
                                        *Wesley Hill*
                                        Jeffrey R. Bragalone (lead attorney)
                                        Texas Bar No. 02855775
                                        Terry A. Saad
                                        Texas Bar No. 24066015
                                        Marcus Benavides
                                        Texas Bar No. 24035574
                                        Hunter S. Palmer
                                        Texas Bar No. 24080748
                                        **BRAGALONE OLEJKO SAAD PC**
                                        2200 Ross Avenue
                                        Suite 4600W
                                        Dallas, TX 75201
                                        Tel: (214) 785-6670
                                        Fax: (214) 785-6680
                                        jbragalone@bosfirm.com
                                        tsaad@bosfirm.com
                                        mbenavides@bosfirm.com
                                        hpalmer@bosfirm.com

                                        Wesley Hill
                                        Texas Bar No. 24032294
                                        **WARD, SMITH, & HILL, PLLC**
                                        P.O. Box 1231
                                        Longview, TX 75606
                                        Tel: (903) 757-6400
                                        Fax: (903) 757-2323
                                        wh@wsfirm.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **STINGRAY IP SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on June 14, 2021.

/s/ *Wesley Hill*