**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **STINGRAY IP SOLUTIONS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. No. 2:21-CV-00043-JRG** |
| | § | **C.A. No. 2:21-CV-00044-JRG** |
| **SIGNIFY N.V.,** | § | |
| **SIGNIFY (CHINA) INVESTMENT CO.,** | § | |
| **LTD.,** | § | **JURY TRIAL DEMANDED** |
| **SIGNIFY HONG KONG LIMITED,** | § | |
| **SIGNIFY NETHERLANDS B.V., and** | § | |
| **SIGNIFY POLAND SP. Z.O.O.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION FOR LEAVE TO EFFECT
<u>ALTERNATIVE SERVICE</u>**

Plaintiff Stingray IP Solutions, LLC ("Stingray" or "Plaintiff") files this Motion for Leave to Effect Alternative Service on Defendants Signify (China) Investment Co., Ltd. (referred to herein as "Signify China"), Signify Hong Kong Limited (referred to herein as "Signify HK"), Signify Netherlands B.V. (referred to herein as "Signify Netherlands"), and Signify Poland Sp. z.o.o. (referred to herein as "Signify Poland") (collectively, the "Added Signify Defendants"). Stingray respectfully seeks leave to serve the summons and complaint on these defendants via alternative means. Specifically, because it is apparent that counsel of record for Signify N.V. has an ongoing attorney-client relationship with the Added Signify Defendants, Stingray requests leave to serve the Added Signify Defendants via counsel of record for parent company and co-Defendant Signify N.V ("Signify NV").

## I.    FACTS SUPPORTING ALTERNATIVE SERVICE

### A.    Background

Plaintiff is a Texas limited liability company located at 6136 Frisco Sq. Blvd., Suite 400, Frisco, TX 75034. -00043, -00044, Dkt. Nos. 1, ¶ 1. On February 8, 2021, Plaintiff filed the above-referenced actions in two original complaints alleging that Signify N.V., a publicly traded company formed in the Netherlands, infringes Stingray's Asserted Patents. On May 31, 2021, Defendant Signify NV filed a motion to dismiss, alleging a lack of personal jurisdiction. On June 14, 2021, Stingray filed a First Amended Complaint in each of the above-captioned cases (Dkt. Nos. 15, the "FACs"). The FACs added the above-identified four defendants: Signify China, Signify HK, Signify Netherlands, and Signify Poland—all of which are non-resident wholly-owned subsidiaries of Defendant Signify NV (collectively with Signify NV referred to herein as "Defendants"). FACs, ¶¶ 4-7.

On information and belief, Signify China is a limited liability company organized under the laws of the People's Republic of China ("China"), with its principal place of business located

1

at Building No. 9 Lane 888, Tian Lin Road, Shanghai, China and/or No. 8 Min Tai Road Economy Development Zone, Yizheng, Jiangsu province. Signify HK is a limited liability company organized under the laws of Hong Kong, China, with its principal place of business located at 20th Floor, Tower 2, Enterprise Square One No. 9 Sheung Yuet Road, Kowloon Bay, Hong Kong, China. Signify Netherlands is a corporation organized under the laws of the Netherlands, with its principal place of business located at High Tech Campus 48, 5656 AE Eindhoven. Signify Poland is a limited liability company organized under the laws of Poland, with its principal place of business located at Al. Jerozolimskie 195B, 02-222 Warszawa, Poland.

Defendants are all part of an interconnected group of 150 subsidiaries (the "Signify Group") operating in 74 countries that in concert place Signify products into establish distribution channels that begin in the Netherlands, i.e., the corporate headquarters, and extend out to 39 manufacturing sites in, for example, China, Hong Kong, Poland, and the U.S. The Signify Group, led by the parent Signify NV and including the Added Signify Defendants, manufactures and distributes infringing Signify products throughout the world. As part of this worldwide distribution, the Signify Group imports into the United States infringing Signify products to Signify North America Corporation ("Signify NAC"), a U.S.-based indirect subsidiary of Signify NV, among other subsidiaries and distribution channels. Defendant Signify NV is the head of the Signify Group, has decision-making authority across the subsidiaries of the Signify Group, and exerts control over the worldwide operations of the Signify Group, including the Added Signify Defendants and Signify NAC.

Signify NV has already been served in these lawsuits and shares in-house and outside counsel with both Signify NAC and at least Signify Netherlands. Plaintiff has already made extensive efforts to serve the Added Signify Defendants and to ensure those defendants have

adequate notice of these lawsuits. Specifically, on June 25, 2021 Stingray served each of the Added Signify Defendants in the U.S. via the registered service agent of Signify NAC, which is incorporated in Delaware. *See, e.g.*, -00043, Dkt. Nos. 19-22 (summons returned executed). Because Signify NAC is an agent and/or alter ego of Signify NV and the Added Signify Defendants, these companies can be properly served via Signify NAC under at least Rule 4(h)(1)(B).

In addition to service via Signify NAC, Stingray has made additional attempts to ensure notice of these suits has been adequately rendered on the Added Signify Defendants. First, copies of the complaint were mailed, i.e., by Fed Ex, on or about June 29, 2021 to the Added Signify Defendants at their principal places of business and were delivered and accepted on or about July 1st or 2nd. *See* Exs. 1-4 (delivery confirmations).[1] Second, on or about June 24, 2021, Plaintiff attempted service of the Added Signify Defendants via Signify NV's counsel of record. Counsel for Signify NV, however, refused to accept service on behalf of the related entities, stating that they do not represent the Added Signify Defendants in these matters.

Given the multiple attempts to serve the Added Signify Defendants and the close relationship of the parties with Defendant Signify NV and with Signify NAC, the Added Signify Defendants are likely aware of these lawsuits and have adequate notice of the claims made against them in the FACs. Their refusal to respond to those claims appears to be a calculated tactic by parent Signify NV to delay these proceedings and to further benefit its pending attempt to relocate these proceedings to the District of New Jersey, via its pending Motion to Dismiss (Dkt. Nos. 23).

The tactical resistance to service by the Signify Defendants is evidenced by the curious "Notice" filed by Signify NV *on behalf of the Added Signify Defendants*, alleging that service of

---

[1] See also Exhibit 5, Declaration of Marcus Benavides which support Exs. 1 - 4.

the Added Signify Defendants via Signify NAC was improper and requesting that the automatically generated answer deadline on the Court' docket for these Defendants "be removed." *See, e.g.*, Dkt. Nos. 26. The "Notice" filed by Signify NV is important for several reasons, each of which supports Stingray's request for alternative service. First, the Notice is, arguably, a general appearance by the Added Signify Defendants. The objection to service by the Added Signify Defendants would have more properly been made via a limited appearance and a motion contesting service under Rule 12(b)(5). *See id*. at 2. However, the Notice, since it is not a 12(b)(5) motion filed on their behalf, should be considered a general appearance by those companies. Second, the Notice makes clear that counsel for Signify NV, who filed the Notice, have been designated to appear on behalf of the Added Signify Defendants for at least the purpose of objecting to service. Thus, despite counsel's representation to Stingray that they do not represent those parties, they clearly acted on their behalf in filing the Notice with the Court—indicating there is indeed a relationship between counsel of record for Signify NV and the Added Signify Defendants.

Three critical facts further show that counsel for Signify NV do indeed represent the other Added Signify Defendants. First, one of the Added Signify Defendants, Signify Netherlands B.V., is currently represented in a pending litigation in the Western District of Texas (Waco Division) by the same counsel Alston & Bird LLP ("Alston") that represents Signify NV in this Court. *See* Dkt. Nos. 34, p. 14 (citing Ex. S which is Docket No. 20 in C.A. No. 6:21-cv-00146-ADA, Dkt No. 20, WDTX). This same counsel Alston represents Signify NAC in a pending and mirror New Jersey declaratory judgement action, which was filed after this lawsuit. *See id*. at 3, 14 (citing Ex. L). Second, in support of its Motion to Dismiss for lack of personal jurisdiction, Signify NV attached a supporting declaration from an employee of Signify Netherland B.V.—the same named Defendant that counsel claims they do not represent. And indeed, that declarant, Mr. Eric

4

Vermeulen, is in-house counsel for Signify Netherlands, and is clearly authorized to testify on behalf of Signify NV. *Id.* at 5 (citing Dkt. No. 23, Ex. 1). Though unable to confirm without discovery of Mr. Vermeulen (see request in Stingray's Motion for Jurisdictional Discovery, Dkt. Nos. 33), Stingray suspects that Mr. Vermeulen's participation on behalf of Signify NV is an indicator that all of the Defendants, as part of the Signify NV-controlled Signify Group, share in-house legal services and will, thus, be represented by the same outside counsel in this case. Third, in Signify NV's Motion to Dismiss and associated briefing, it continues to speak on behalf of the Added Signify Defendants. *See, e.g.*, Dkt. Nos. 35, pp. 2-4 (Signify NV's Reply denying that Added Signify Defendants' acts of shipping Signify products are not infringing); *id.* at 6 (stating that "[t]hese companies operate with one another in the typical predictable manner").

Because the Added Signify Defendants have been properly served and arguably have appeared in these cases through counsel for Signify NV, Stingray believes it could have sought default judgment against those Defendants for failing to timely respond to the First Amended Complaints. But because Stingray merely seeks to move these cases forward and proceed towards trial on the merits against all Defendants, it, instead, moves the Court for leave to effect alternative service on the Added Signify Defendants merely to put to rest any doubt regarding service on those parties and to prompt the Added Signify Defendants to respond to the First Amended Complaints and fully participate in this litigation. Because of the numerous indicators that counsel for Signify NV is currently already representing the Added Signify Defendants in this litigation *and others*, Stingray's request for leave to serve the Added Signify Defendants via counsel of record for Defendant Signify NV is both reasonable and warranted to save the time and expense of service through the terms of the Hague Convention on international parties.

**B.      As Head of the Signify Group, Signify NV Exerts Direction and Control Over Its Consolidated Subsidiaries.**

Publicly available documents and websites show that Defendants are all interconnected and related entities such that the Signify Group's reach extends from its headquarters in the Netherlands all the way to at least Signify NAC in the United States. In Stingray's Response (cited as Dkt. Nos. 34), Stingray briefed and cited evidence supporting this Court's personal jurisdiction over Signify NV. Included in that Response was argument and evidence relied upon and cited in this Motion showing that the Defendants, including Signify NV, acted in concert together with other subsidiaries in the Signify Group, including Signify NAC, to place accused Signify products in the stream of commerce. *See, e.g.*, Dkt. Nos. 34, pp. 12-17. Importantly, Signify NV addresses only a fraction of Stingray's allegations, leaving others unrebutted. *See id*. at 12-13.

Indeed, Signify NV acknowledges that Signify NAC is merely one link in the supply chain comprising multiple Signify Group companies, specifically including the Added Signify Defendants, that ultimately result in the importation of accused products into the United States. *See* Dkt. Nos. 35, pp. 3-4. Clearly, Signify NV has established distribution channels into the United States that involve multiple overlapping levels of wholly-owned subsidiaries carrying out the operations and activities that begin with the design and manufacturing of the products internationally and culminate in the importation and sale of the products. Signify NAC's activities, which include selling accused products in the U.S. (Dkt. Nos. 23, p. 6), are intermingled with those of the Added Signify Defendants, who manufacture, import, sell, and conform accused products for sale in the U.S. *See, e.g.*, Dkt. Nos. 34, pp. 16-17 (citing Exs C-F). For example, as a part of Signify's global manufacturing and distribution network, "Signify China manufactures Signify products and makes applications with the [FCC], as the responsible party, for the use and operations of those products in the U.S." FAC, ¶ 28 (citing Exs. C and D). "Signify HK ships into

6

the [U.S.] Signify products directly to subsidiary Signify NAC, among other subsidiaries and/or third-party distributors." FAC, ¶ 33 (citing Ex. E). "Signify Netherlands imports into the [U.S.] Signify products directly to subsidiary Signify NAC, among other subsidiaries and/or third-party distributors." FAC, ¶ 38 (citing Ex. F). "Signify Poland manufactures and imports into the [U.S.] Signify products directly to subsidiary Signify NAC, among other subsidiaries and/or third-party distributors." FAC, ¶ 43 (citing Ex. E).

Indeed, the evidence shows that Signify NV exercises extraordinary control over its material consolidated subsidiaries indicative of an alter ego or agency relationship, including Signify NAC. Signify NV, for example, shares common business departments that manage global sales channels, including the distribution channels that export from abroad and import accused products into the U.S. *Id*. Furthermore, the Signify Group has division and market groups that share common services, including "legal" services (i.e., sharing in-house and litigation counsel). *Id*. At least Defendant Signify Netherlands and Signify NV share the same corporate offices in the Netherlands. *Id*. Finances are also intermingled via at least remunerating costs of directors from subsidiaries, lending funds and unilaterally refinancing loans to subsidiaries, consolidating financial statements with subsidiaries, which indicates Signify NV controls those subsidiaries, and sharing in results of subsidiaries, including payment of debt and paying out dividends. *Id*.

Crucially, not only is Signify NV the "parent company," it describes itself also as the "chief operating decision maker" of the operating segments which are "components of Signify's business activities" and that Signify NV, "operates in many countries via its subsidiaries and affiliated companies." *See* Dkt. Nos. 34, p. 12-15 (citing Ex. A, pp. 28, 32, 61-62, 90). Furthermore, Signify NV states that it "has the ability to affect the returns" from its subsidiaries by its own "involvement with" and "power over" its subsidiaries. *Id*. (quoting Ex. A, pp. 91). These statements, among

others, directly indicate that there is "entanglement of operations and blurring of corporate identities," between Signify NV and its subsidiaries that contradict Signify NV's contentions of separateness. Signify NV's alleged "separateness" is merely a fabrication designed to benefit its litigation strategy of delay and transfer, rather than proceeding in this Court on the merits.

## II.   ARGUMENT

Federal Rule of Civil Procedure 4(h) governs service of corporations and refers to Rule 4(f) for serving a foreign corporation outside of the U.S. *See* Fed. R. Civ. P. 4(h)(2). Foreign service can be accomplished by one of three methods: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents [the "Hague Convention"]; (2) . . . as prescribed by the foreign country's law for service in that country . . . or (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3). The Added Signify Defendants are from countries that are parties to the Hague Convention.

The Hague Convention outlines a process by which a signatory country establishes a central authority that serves process from foreign parties on parties within the country. *See, e.g.*, Hague Convention, Article 2. However, courts have recognized that service through the official channels established under the Hague Convention can be costly and time-consuming—taking up to two years to complete, for example in China. *See, e.g.*, *Victaulic Co. v. Allied Rubber & Gasket Co.*, Case No. 3:17-cv-01006-BEN-JLB at 3 (S.D. Cal., May 8, 2020).

One reasonable alternative to following the Hague Convention's formal process is available under Article 10 of the Hague Convention, which allows for parties in signatory countries to be served via mail—provided that the signing country does not specifically object. *See* Hague Convention, Article 10; *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1513 (2017). Signify China

8

and Signify Poland are located in China and Poland, respectively, which have formally objected to Article 10. *China Judicial Assistance Information: Service of Process*, U.S. DEPARTMENT OF STATE, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited June 3, 2021); *Poland - Central Authority & practical information*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/states/authorities/details3/?aid=268 (last visited July 29, 2021). Signify Netherlands and Signify HK reside in the Netherlands and in Hong Kong, China and do not object to service by international registered mail or service by agent, respectively. *Hong Kong Judicial Assistance Information: Service of Process*, U.S. DEPARTMENT OF STATE, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last visited July 29, 2021); *Netherlands - Central Authority & practical information*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/index.cfm?oldlang=en&act=authorities.details&aid=37 (last visited July 29, 2021). Thus, service by mail would be acceptable for Signify Netherlands and Signify HK, but service on Signify China and Signify Poland would require adherences to the more formal and time consuming official channels under the Hague Convention. But there are alternatives.

Critically, "a plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)." *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *1 (W.D. Tex. July 2, 2014). Moreover, "alternative service pursuant to Rule 4(f)(3), on a foreign defendant, effectuated in the United States, was not in violation of the Hague Convention." *Id.* (citing *Brown v. China Integrated Energy Inc.*, 285 F.R.D. 560, 563 (C.D. Cal.

9

2012)). To be clear, Stingray requests that alternative service be "effectuated in the United States." *Id*. Therefore, its request would not violate the Hague Convention.

Given the likelihood that the Added Signify Defendants already know about the above-referenced actions, alternative service via Signify NAC, a U.S. based subsidiary, via its registered agents or corporate officers or via the common counsel that it shares with Signify NV and at least one Added Signify Defendant, would not only be the most expedient and efficient manner to reach the Defendants, but is also warranted by the circumstances of this case.

### A.     The Circumstances of This Case Warrant Alternative Service.

Substituted service is allowed if the method of service is directed by the Court and not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). Moreover, the Hague Convention does not prohibit service on a foreign entity when such service is effected in the U.S. To the contrary, the Supreme Court has held that the Hague Convention does not apply when "service on a domestic agent is valid and complete under both state law and the Due Process Clause." *Volkswagenwerk*, 486 U.S. at 707;  *see also RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at \*3 (S.D.N.Y. Aug. 10, 2007) (holding that alternative service through defendant's U.S. counsel did not implicate the Hague Convention  because it involved no transmittal of documents abroad).

As such, multiple courts have allowed service on foreign corporations by serving their United States counsel under Rule 4(f)(3), and courts have specifically authorized service on such attorneys via email. *See e.g.*, *Fundamental Innovation Systems Intl., LLC v. ZTE Corp.*, No. 3:17-CV-01827-N, 2018 WL 3330022, at \*5 (N.D. Tex. Mar. 16, 2018) (allowing service on Chinese defendant's United States counsel); *Cheetah Mobile,* 2016 WL 4036098 at \*1-3 (allowing alternative service of Chinese defendant through counsel). Moreover, district courts routinely allow alternative service of foreign defendants to be   accomplished via service upon a United States subsidiary or affiliate. *See, e.g., Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d

1222, 1239 (Fed. Cir. 2010) (acknowledging cases allowing service of foreign entities through domestic subsidiaries and counsel); *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186, at \*4 (N.D. Cal. June 12, 2008) (allowing service of  six Chinese defendants through California subsidiary). Plaintiff's proposed alternative means of service through Defendants' United States counsel and their United States subsidiary comport with due process and do not conflict with international laws or agreements.

Here, alternative service under Rule 4(f)(3) is justified given Plaintiff's good-faith—but seemingly ignored—attempts to serve Defendants through reasonable means, and as an alternative to the time-consuming and expensive process of serving Defendants through China or Poland's official authority. *See WorldVentures Holdings, LLC v. Mavie*, 2018 WL 6523306, \*14 (E.D. Tex. 2018) (service on a defendant in Singapore involved "unnecessary time and expense ordinarily needed to effectuate service on parties based thousands of miles away"); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 262 (S.D. Ohio 2013) (acknowledging that "service on the Chinese entity as well as the Polish entity could be significantly delayed if formal service pursuant to the Hague Convention is required"); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (ordering alternative service because "the length of time required for service under the Hague Convention, approximately six to eight months … may unnecessarily delay this case"); *Baker Hughes Inc. v. Homa*, No. H-11-3757, 2012 WL 1551727, at \*16- 17 (S.D. Tex., Apr. 30, 2012) (holding that avoiding additional cost is a sufficient justification for seeking an alternative method of service).

Plaintiff could also request service on Signify Netherlands and Signify HK via the clerk of the Court under Fed. R. Civ. Proc. 4(f)(2)(C)(ii) and 4(h)(2) because such service is permitted

under the Hague Convention. But under the circumstances of this case, there exists a better, more efficient, less costly, and still reasonably calculated way to serve the Added Signify Defendants.

**B.      The Alternative Service Requested Is Reasonably Calculated to Give Notice to the Added Signify Defendants.**

Due process requires that the method of service ordered by the Court must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 330 U.S. 306, 314 (1950). Plaintiff seeks leave to serve the Added Signify Defendants through one or both of the following alternative methods, either separately or concurrently:

1. Serving the complaints and other required materials on the registered agent for service of process for Defendants' United States subsidiary, Signify NAC.

2. Serving the complaints and other required materials via counsel of record for co-Defendant and parent company, Signify NV.

As shown below, both proposed methods are reasonably calculated to give notice to the Added Signify Defendants of these lawsuits and warranted by the circumstances of this case.

**1. The Added Signify Defendants Can Be Served via Their U.S. Subsidiary, Signify NAC.**

Serving Defendants via their U.S.-based subsidiary, Signify NAC, satisfies due process. Numerous courts, including this Court, have allowed alternative service of foreign defendants to be accomplished via service upon a U.S. subsidiary or affiliated company. *See WorldVentures*, 2018 WL 6523306 at *14; *Affinity Labs*, 2014 WL 11342502 at *1-2. To be clear, this Court is *not required* to find that Signify NAC was "actually authorized [by Signify NV] to accept service" or that they were the "same corporation," i.e., an alter ego, though evidence of record shows that. "[T]hese arguments are ineffectual." *Affinity Labs*, 2014 WL 11342502 at 3. In fact, "[d]ue process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept on their behalf." *Id*. (internal citations omitted). What is vital is that

12

the chosen method "is in itself reasonably certain to inform those affected." *Id.* (quoting *Mullane*, 339 U.S. at 315).

Here, serving Signify NAC would be reasonably certain to inform the Added Signify Defendants because, as discussed above, Defendants are all interconnected and related entities such that the Signify Group's reach extends from its headquarters in the Netherlands all the way to at least Signify NAC in the United States. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("service on a domestic agent is valid and complete under both state law and the Due Process Clause"). Indeed, the Defendants, including Signify NV, acted in concert together with other Signify Group subsidiaries, including Signify NAC, to place accused Signify products in the stream of commerce. *See, e.g.*, Dkt. Nos. 34, pp. 12-17. Moreover, the evidence of record shows that Signify NAC is one of the Signify Group's material consolidated subsidiaries and is controlled by Signify NV. *Id.* at 14-15 (citing Ex. A, pp. 32, 61-2, 90-1, 107, 28). Indeed, the "degree of control exercised by" Signify NV over its subsidiaries is "greater than that normally associated with common ownership and directorship." *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *see also* Dkt. Nos. 34, pp. 23-25 (citing Ex. A, ¶¶ 61, 129, 132-33).

Signify NAC is more than merely affiliated with the involved parties to this controversy; it is directly involved and invested, having filed its own declaratory judgment action in New Jersey that mirrors the same patents, products, and issues in this case. Signify NAC is even an alleged "necessary party" under Fed. R. Civ. Proc. 19. Dkt. Nos. 35, p. 4. Though the New Jersey lawsuit should be dismissed under the first-to-file rule and Signify NAC is actually not a required party under Rule 19, these circumstances definitively show that, Signify NAC, a wholly owned subsidiary of Signify NV, is a logical choice to accept alternative service on behalf of its related companies. Undoubtedly, Signify NAC has already communicated with the Defendants, including via common

13

counsel, concerning these lawsuits, including providing the received service documents. This is further evidenced by the declaratory judgment action that Signify NAC filed in the District of New Jersey mirroring the claims of these cases. There is active coordination of efforts and strategies occurring between the named Defendants in these cases and Signify NAC.

Here, Plaintiff has already served process on the registered agent for Signify NAC. If this request is granted, the Court can deem that service proper and set a response date for the Added Signify Defendants. Or, with permission from the Court, Plaintiff will re-serve Signify NAC via its registered agent with the summons, complaints, and the Court's order for alternative service.

### 2. The Added Signify Defendants Can Be Served via Known Common Counsel.

Defendants can also be served, and Due Process satisfied, by sending service documents Signify NV's counsel of record, Alston. That same counsel represents Signify Netherlands in an unrelated lawsuit in the Western District of Texas (Dkt. No. 34 at Ex. S) and Signify NAC in a declaratory judgment lawsuit in the District of New Jersey that mirrors these lawsuits (*See id*. at 3, 14 (citing the New Jersey lawsuit as Ex. L)). This method is not only reasonably designed to give Defendants notice, but is also commonplace: "courts routinely direct service on an international defendant's counsel under Rule 4(f)(3)." *WorldVentures*, 2018 WL 6523306 at \*14. There is simply no reason that Alston can represent Signify Netherlands in patent litigation two-hundred miles away from this Court in Waco, Texas, but cannot accept service on behalf of that same company in this Court for these matters, especially where Alston already represents the parent company here. Service in this manner is most certainly reasonably calculated to give notice.

Signify NV's counsel has already appeared on behalf of the Added Signify Defendants, by filing Notices that object to service via Signify NAC. This same counsel represents Signify Netherlands and Signify NAC in the Western District of Texas, and clearly has access to its

employees, such as Mr. Vermeulen. *See* Dkt. No. 34, p. 14 (citing Ex. S). As a legal representative for at least Signify NV, Signify Netherlands, and Signify NAC, counsel has clearly been in contact with those clients regarding this matter and other involved Signify parties, at least as is required to adequately represent those clients. *See, e.g.*, Tex. R. Disc. P. 1.03. At a minimum, counsel for Signify NV is in the best position to reasonably apprise its client Signify Netherlands of the pendency of this action and afford it the opportunity to respond to the FACs. Importantly, the Added Signify Defendants are, arguably, already in default of their obligation to respond to Stingray's FACs, of which the Notice filed by Signify NV indicates that they are already aware.

Service via counsel for Signify NV, as the parent company, provides effective notice to those Added Signify Defendants as well. Signify NV exerts control and responsibility over the entire Signify Group, as demonstrated by its Annual Reports and import records. *See* Dkt. No. 34, pp. 14-16. Importantly, Signify NV moves products from manufacturing sites abroad to the consumer by controlling at least the Added Signify Defendants. In other words, the activities of these parties are so intermingled via manufacturing, importing, selling, and conforming accused products for sale in the U.S., confirmed by import records and other cited evidence (*see, e.g.*, *id.* at 16-17 (citing Exs C-F)) that serving a lawsuit on counsel for the parent company would necessarily notify the other related defendants. Thus, service on counsel of record for Signify NV meets the standard set forth in *Mullane* and apprises the Added Signify Defendants of these actions, affording the Defendants ample opportunity to appear and answer to Plaintiff's FACs.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to grant this motion and enter an order approving alternative service of process on Defendants through: (1) their U.S. subsidiary, Signify NAC; (2) through counsel of record for parent company Signify NV; or (3) through both means, either separately or concurrently, as proper under Rule 4(f)(3) and (h)(2).

Dated: August 3, 2021                    Respectfully submitted,

*/s/ Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Terry A. Saad
Texas Bar No. 24066015
Marcus Benavides
Texas Bar No. 24035574
Hunter S. Palmer
Texas Bar No. 24080748
**BRAGALONE OLEJKO SAAD PC**
2200 Ross Avenue
Suite 4600W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bosfirm.com
tsaad@bosfirm.com
mbenavides@bosfirm.com
hpalmer@bosfirm.com

Wesley Hill
Texas Bar No. 24032294
**WARD, SMITH, & HILL, PLLC**
P.O. Box 1231
Longview, TX 75606
Tel: (903) 757-6400
Fax: (903) 757-2323
wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
STINGRAY IP SOLUTIONS, LLC**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel in this case has complied with the meet and confer requirement set out in Local Rule CV-7(h) and that this motion is opposed by counsel for Defendant Signify N.V to the extent that it has refused to accept service on behalf of the Added Signify Defendants. Specifically, on June 22, 2021, counsel for Plaintiff sent via email to counsel for Signify NV the summons and First Amended Complaints in each of the above-referenced matters along with a request that counsel for Defendant Signify N.V. accept service on behalf of the related Signify Defendants. On June 24, 2021, counsel for Signify NV responded via email to say: "We do not represent Signify Hong Kong Limited, Signify Netherlands B.V., Signify Poland SP z.o.o., or Signify (China) Investment Co., and cannot accept service for them." Thus, Defendants Signify Netherlands, Signify China, Signify Hong Kong Limited, and Signify Netherlands B.V. are currently unrepresented by counsel in this matter. Plaintiff, therefore, cannot confer with their counsel regarding this Motion.

*/s/ Terry Saad*
Terry Saad

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on August 3, 2021.

*/s/ Terry Saad*
Terry Saad