IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| STINGRAY IP SOLUTIONS, LLC, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 2:21-CV-00044-JRG |
| SIGNIFY N.V., SIGNIFY (CHINA) INVESTMENT CO., LTD., SIGNIFY HONG KONG LIMITED, SIGNIFY NETHERLANDS B.V., SIGNIFY POLAND SP. Z.O.O., | § § § § § § § § | [LEAD CASE] |
| *Defendants*. | § § | |

**ORDER**

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss") filed by Defendant Signify N.V. (Dkt. No. 23). Also before the Court is Plaintiff's Motion for Expedited Jurisdictional Discovery and to Extend time to Respond to Defendant Signify N.V.'s Motion to Dismiss (the "Motion for Jurisdictional Discovery") (Dkt. No. 33). Having considered the Motion to Dismiss, the related briefing, and the parties' oral argument, the Court finds that it should be and hereby **DENIED**. Consequently, the Motion for Jurisdictional Discovery should be **DENIED AS MOOT**.

**I.      BACKGROUND**

Stingray IP Solutions, LLC ("Stingray") filed this lawsuit against Signify N.V. ("Signify" or "Signify N.V.") on February 8, 2021, accusing Signify's smart lighting products of infringing U.S. Patent Nos. 7,082,117, 7,224,678, 7,440,572, and 7,616,961. (Dkt. No. 1).[1] On May 31, 2021,

---

[1] On the same day, Stingray also filed a companion case alleging infringement of U.S. Patent Nos. 6,958,986, 6,961,310, and 7,027,426. *Stingray IP Solutions, LLC v. Signify N.V.*, No. 2:21-CV-00043-JRG (the "-43 Case"). In

Signify N.V. filed a Motion to Dismiss for lack of personal jurisdiction. (Dkt. No. 13). On the same day, Signify North America Corporation ("Signify NAC"), an entity not involved in this action, filed a complaint for declaratory judgment of noninfringement in the District of New Jersey with respect to all patents asserted in both actions pending before this Court. *Signify N. Am. Corp. v. Stingray IP Solutions, LLC*, No. 3:21-CV-11989, Dkt. No. 1 (D.N.J. May 31, 2021). Stingray amended its Complaint in this case on June 14, 2021 to add Defendants Signify (China) Investment Co., Ltd., Signify Hong Kong Limited, Signify Netherlands B.V., and Signify Poland Sp. Z.O.O. (Dkt. No. 15). The First Amended Complaint ("FAC") asserts theories of direct and indirect infringement as to each defendant. (*See generally id*.).

Signify N.V. is a Dutch holding company which directly or indirectly owns numerous companies involved in lighting technologies, and is the parent of the other four corporate defendants. (Dkt. No. 23 at 9). Stingray alleges that the other defendants are involved in aspects of development, importation, manufacture, sale, or marketing of the accused products in the U.S. (Dkt. No. 15 ¶¶ 4–7). Sales of the accused products in the U.S. are made by WiZ Connected Lighting Co. Limited ("WiZ"), Genlyte Corporation, Signify NAC, and Cooper Lighting, LLC. (Dkt. No. 23 at 9–10).

Defendant Signify N.V. moves to dismiss the First Amended Complaint filed by Stingray (1) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); (2) for failure to join indispensable parties under Fed. R. Civ. P. 12(b)(7); and (3) under the first-to-file rule in view of Signify NAC's declaratory judgment complaint filed in the District of New Jersey.

---

the -43 Case, Stingray amended its complaint to include the same five defendants as accused here, and Signify filed a motion to dismiss raising the same grounds as the present motion. (*See* -43 Case, Dkt. No. 23). The two cases have since been consolidated under the above caption for pretrial issues. (Dkt. No. 51). The Court will enter a companion Order on the motion to dismiss in the -43 Case.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

A federal district court has personal jurisdiction over a party if the party would be subject to personal jurisdiction in a court of general jurisdiction in the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A). When a party is not a resident of that state, the exercise of personal jurisdiction must comport with both the state's "long-arm statute" and constitutional principles of due process. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Under Fed. R. Civ. P. 4(k)(2), a defendant is subject to personal jurisdiction if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (citation omitted); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). As opposed to Fed. R. Civ. P. 4(k)(1), the due process requirement of Fed. R. Civ. P. 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling*, 890 F.3d at 999.

Due process requires that a party have sufficient minimum contacts with the forum state such that the exercise of jurisdiction would not offend traditional notions for fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing whether due process is satisfied, the Federal Circuit considers: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to those activities; and (3) whether the exercise of jurisdiction would be fair and reasonable. *Celgard*, 792 F.3d at 1377.

3

### B. Failure to Joint a Necessary and Indispensable Party

"[A] Rule 12(b)(7) analysis entails two inquiries under Rule 19." *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *Id*. "If joinder is warranted, then the person will be brought into the lawsuit." *Id*. "But if such joinder would destroy the [C]ourt's jurisdiction, then the Court turns to Rule 19(b) and determines "whether to press forward without the person or to dismiss the litigation." *Id*.

> A party is necessary under Rule 19(a)(1) if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

### C. First-to-File Rule

"The first-to-file rule is a discretionary doctrine . . . ." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id*. Under the first-to-file rule, "the first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (internal citations omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

Stingray advances four theories of specific personal jurisdiction in the FAC and its briefing. Essentially. First, Stingray argues that Signify N.V. is subject to personal jurisdiction under a stream-of-commerce theory. (Dkt. No. 15¶ 22; Dkt. No. 34 at 18). Second, Stingray argues that Signify's subsidiaries, including the other four named defendants, are Signify's "alter egos." (Dkt. No. 15 ¶ 20; Dkt. No. 34 at 29). Third, and to the extent Signify is not subject to personal jurisdiction in any state, Stingray argues Signify has sufficient minimum contacts with the United States as a whole and is therefore subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). (Dkt. No. 15 at ¶ 24; Dkt. No. 34 at 31).

The Court ultimately concludes that Signify is subject to personal jurisdiction under a stream-of-commerce theory. Therefore, the Court denies the Motion to Dismiss on this ground and needs not address Stingray's alternate theories.

#### 1.  Signify has Sufficient Minimum Contacts with Texas

Stingray alleges that Signify has sufficient minimum contacts with Texas under the stream-of-commerce doctrine. Two competing views of the stream-of-commerce doctrine originated in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987). Justice Brennan, writing for himself and Justices White, Marshall, and Blackmun, opined that placing goods into the stream of commerce alone was sufficient to give rise to personal jurisdiction. *Id.* at 117 (Brennan, J. concurring). Justice O'Connor, writing for herself, the Chief Justice, and Justices Powell and Scalia, could not endorse jurisdiction premised on the stream of commerce without "something more" indicating a purposeful targeting of the forum. *Id.* at 109–108 (O'Connor, J. plurality op.).

Nearly twenty-five years later, in *J. McIntyre Machinery, Ltd. v. Nicastro*, the Supreme Court was again asked to address stream-of-commerce jurisdiction. 564 U.S. 873 (2011). The petitioner, J. McIntyre, a United Kingdom company, had manufactured a machine that seriously injured the respondent in New Jersey. *Id.* at 878. J. McIntyre had sold the machine to an independent U.S. distributor, which brought the machine to New Jersey. *Id.* J. McIntyre did not itself sell or market machines in the United States, and there was no allegation that the distributor was under J. McIntyre's control. *Id.* While representatives of J. McIntyre had attended conferences in the United States, none of the conferences were in New Jersey. *Id.* Justice Kennedy, joined by the Chief Justice and Justices Scalia and Thomas, opined that stream of commerce without more was insufficient to give rise to personal jurisdiction. *Id.* at 882–83. Even though while Justice Kennedy in *J. McIntyre* endorsed Justice O'Connor's view in *Asahi Metals*, neither opinion has carried a majority of the Supreme Court. It remains unresolved whether Justice Brennan's view ("stream of commerce" alone) or Justice O'Connor's view ("something more") controls, and the Courts of Appeals have divided on this question. *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–68 (Fed. Cir. 1994) (collecting cases).

On the facts presented in this case, the Court is persuaded that under either test personal jurisdiction is satisfied. In its 2020 annual report, Signify describes itself as "a manufacturing company" and enumerates all of its 39 manufacturing sites located around the globe, including 7 in the U.S. (Dkt. No. 34-1 ("2020 Annual Report") at 28). In the FAC, Stingray alleges that Signify, directly or through its subsidiaries and affiliates, contracts with national retailers, and "at least Home Depot, Walmart, and Amazon.com offer for sale and sell Signify products, in and specifically for the U.S. market, via their own websites or retail stores located in and selling their products to consumers in Texas and this judicial district." (FAC, Dkt. No. 15 ¶ 22) (citing Dkt.

No. 34-7 (showing Signify's Philips Hue product for sale at a Home Depot location in Frisco, Texas)). Stingray further alleges that Signify has used its corporate structure to direct and control its subsidiaries and involve itself in the placement of goods in the stream of commerce, including within Texas. (*See, e.g.*, FAC, Dkt. No. 15 ¶¶ 3, 15, 20, 21).

Signify argues that it did not purposefully place any alleged infringing goods into the stream of commerce. (Dkt. No. 23 at 23). Signify attaches a declaration from Erik Vermeulen, Senior Legal Counsel for Signify Netherlands B.V., which states that "Signify N.V. is a holding company that does not itself manufacture, design, sell, or offer to sell any products." (Dkt. No. 23-1 ¶ 7). The declaration adds that Signify N.V. has no U.S. employees or places of business. (*Id.* ¶ 8). Signify admits that its domestic subsidiary, Signify NAC, "is an operating company and sells the [a]ccused [p]roducts in the United States." (Dkt. No. 23 at 13). However, Signify argues that the stream of commerce theory is inapplicable because Signify N.V. does not manufacture or exercise control over the manufacture of the accused products. (Dkt. No. 23 at 23) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998)). Signify contends that "[t]o the extent Signify N.V. conducts any business activities, it does so in the Netherlands, where it is incorporated and where its principal place of business is located." (Dkt. No. 23 at 22) (citing Dkt. No. 23-1 ¶ 6).

Stingray's FAC and Signify's 2020 Annual Report, however, tell a different story regarding Signify's involvement in its global operations. For example, Signify's 2020 Annual Report states the following:

- Signify N.V. is the "parent company of the Signify group." (2020 Annual Report at 62).
- Signify N.V. "operates in many countries," including the U.S., "via its subsidiaries and affiliated companies as well as a limited number of branch offices, which primarily act under the Signify trade name." (*Id.* at 62–63).
- The Board of Management ("BoM") of Signify N.V. "is responsible for the establishment and adequate functioning of a system of governance, risk management and internal controls in the

company." (*Id*. at 78). The BoM is the "chief operating decision maker" of the operating segments of the Signify Group, which are "components of Signify's business activities." (*Id*. at 91).

- The other named defendants are listed as Signify's "material subsidiaries … representing more than 5% of either the consolidated company sales, income from operations or net income (before any intra-company eliminations)." (*Id*. at 108). All the entities are 100% owned. (*Id*.).
- Signify N.V.'s consolidated financial statements "comprise the financial statements of Signify N.V. and all [about 150] subsidiaries it controls (i.e., when it is exposed, or has rights, to variable returns from its involvement with the investee and has the ability to affect those returns through its power over the investee)." (*Id*. at 92, 108). These "[s]ubsidiaries are fully consolidated from the date that control commences until the date that control ceases." (*Id*. at 92).

Taken together, these statements indicate that Signify uses its multi-level corporate structure to actively participate "with control and management of group activities related to at least importation, distribution and sale of accused products." *Am. Patents LLC v. D-Link Corporation*, 2020 WL 3972740, at *4 (E.D. Tex. July 14, 2020). These statements are not mere conjecture or attorney argument, but rather statements made by Signify N.V. to the public. (*See* 2020 Annual Report at 4) ("This document is the PDF/printed version of the 2020 Annual Report of Signify N.V.").

Stingray's FAC contains specific allegations that Signify's subsidiaries, including the other named defendants, manufacture and/or import Signify's products into the U.S. via subsidiaries or third-party distributors. (*See* FAC, Dkt. No. 15 ¶¶ 28, 33, 38, 43). Stingray alleges that Signify uses these defendants "and other subsidiaries Signify NAC, Genlyte, WiZ, and Cooper Lighting, to design, develop, import, distribute, and service infringing products, such as Philips and WiZ Wi-Fi connected lighting devices and Philips Hue products." (*Id*. ¶ 21, 22). Signify attempts to detach Signify N.V. from its subsidiaries through the declaration of Erik Vermeulen. (Dkt. No. 23-1). Mr. Vermeulen's declaration, however, fails to fully rebut the allegations made by Stingray and supported by the 2020 Annual Report. First, Mr. Vermeulen is Senior Legal Counsel for Signify Netherlands B.V.—a subsidiary of Signify N.V. (*Id*.). The fact that Mr. Vermeulen opines as to the relationship between Signify Netherlands B.V. and Signify N.V. indicates at least some

8

degree of cooperation—and lack of separateness—between the two entities. Second, Mr. Vermeulen attests that "Signify N.V. does not have any control over the daily operations of Signify North America Corportion or WiZ." (*Id.* ¶ 15). However, Mr. Vermeulen's declaration clearly does not state that Signify N.V. has no control over the daily operations of other Signify subsidiaries, including named defendants Signify (China) Investment Co., Ltd., Signify Hong Kong Limited, Signify Netherlands B.V., and Signify Poland Sp. Z.O.O. In fact, Stingray's allegations regarding the level of operational control exercised by Signify over those entities stand unrebutted, and the Court must accept these allegations as true. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits."). To the extent that Mr. Vermeulen's declaration conflicts with well-pleaded allegations in the FAC, the Court must view the well-pleaded allegations in the light most favorable to Stingray. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (courts "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party").

The Court is persuaded that Signify, by and through its subsidiaries and third-party distributors, has sufficient minimum contacts with the State of Texas to warrant the exercise of personal jurisdiction. At this stage, Stingray has properly pled that Signify's distribution channel—comprising both foreign and domestic subsidiaries—is arranged in such a way that Signify "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas. *Beverly Hills*, 21 F.3d at 1564. Signify's status as a parent, nonmanufacturing entity does not remove it from this Court's personal jurisdiction vis-à-vis the stream of commerce. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018). *Red Wing* is not to the contrary, as that case involved the issue of whether cease-and-desist letters

9

sent to the forum and the licensees' activities in the forum created personal jurisdiction over the patentee. 148 F.3d at 1362 ("HHI's product is a covenant not to sue, not a shoe incorporating the patented technology. As such, HHI's product never enters the stream of commerce."). Here, there is a distinct nexus between Signify's activities as the parent company in the Signify group and the ultimate presence of the accused products in Texas through the stream of commerce. These activities demonstrate an intentional targeting of Texas by Signify for its business activities, sufficient to satisfy either formulation of the stream-of-commerce test. Signify's contacts with Texas therefore evince a purposeful availment of the benefits of conducting business in Texas, such that it should reasonably anticipate being subject to its laws and the jurisdiction of its courts.

### 2. Stingray's Claims Arise from and Relate to Signify's Texas Contacts

The Court is further persuaded that Stingray's claims of infringement arise from or relate to Signify's contacts with Texas. Stingray's infringement claims arise from Signify's placing of allegedly infringing goods into the stream of commerce because Signify's sales of allegedly patent-practicing products are the very acts accused of infringement. *See* 35 U.S.C. § 271(a). Signify does not dispute that this issue is satisfied. (Dkt. No. 23 at 23–24).

### 3. The Exercise of Jurisdiction Is Fair, Just, and Reasonable

Finally, the Court finds no reason why the exercise of personal jurisdiction would contravene traditional notions of fair play and substantial justice. Other than general opposition to the application of a stream-of-commerce theory, Signify makes no claim in its briefing that the exercise of jurisdiction would be unfair, unjust, or unreasonable.

### 4. The Court has Personal Jurisdiction over Signify

Signify chose to conduct business in Texas through a variety of subsidiaries and third-party distributors. Signify uses its complex, multi-level corporate structure to orchestrate the placement

10

of the accused products into the stream of commerce—which ultimately end up in retail space within the U.S. and in Texas. Signify cannot now claim a due process violation when Texas courts exercise jurisdiction over it for tort claims arising from and relating to these sales. For these reasons, the Court **DENIES** the Motion to Dismiss as to personal jurisdiction.

### B. Failure to Join a Necessary and Indispensable Party

Signify next argues that this suit must be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join Signify North America Corporation, in violation of the joinder standard set forth in Fed. R. Civ. P. 19. (Dkt. No. 23 at 25). Signify states that Signify NAC is named in the FAC over fifty times and is described as the source of Defendants' "corporate presence in the United States," as "registered to do business in Texas" and providing a place of business in Texas. (Dkt. No. 23 at 26). Signify argues that Signify NAC is identified as receiving Signify products shipped by the Defendants; as the party that distributes, offers for sale, and sells the accused products in the United States "on behalf of the Signify group"; as Signify's "significant business presence" in the U.S.; and as managing all of Signify's N.V.'s NAC's operations. (*Id.*). Signify further explains that Stingray alleges that Signify N.V. has committed acts of direct and/or indirect infringement "through direction and control of its subsidiaries," specifically including Signify NAC. (*Id.*). Accordingly, Signify argues that the Court cannot accord complete relief among the existing parties because Signify NAC's actions in the United States are alleged to contribute to the infringement in this case. (Dkt. No. 35 at 9). Signify identifies *Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981), as requiring a subsidiary to be joined where "the subsidiary was the primary participant in the events giving rise to the lawsuit." (Dkt. No. 23 at 25). Signify also contends that *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985), requires joinder "when the plaintiff seeks to impose liability on an entity for the acts of another." (Dkt. No. 23 at 26). Signify further argues that Signify NAC controls certain sources of evidence, including

documentary evidence, witnesses, and financial information, which requires joinder under the relevant case law. (*Id.*) (citing *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 397–98 (5th Cir. 1978)). Signify argues that failure to join Signify NAC is fatal because Signify NAC is not incorporated in Texas and does not have a regular and established place of business in this District. (Dkt. No. 23 at 27).

Stingray responds that Signify NAC is not a necessary and indispensable party to this lawsuit and dismissal is not warranted. First, Stingray argues that its allegations are directed to the controlling actions of Signify N.V. itself—the managing entity of the Signify brands. (Dkt. No. 34 at 32–33). Second, Stingray argues that its infringement allegations are not "expressly predicated" on the conduct of Signify NAC or any other U.S. subsidiaries. (*Id.* at 33). Rather, Stingray argues that its allegations are directed to a link in the infringement chain. The fact that there may be other links in the chain does not require the joinder of those actors. (*Id.*). Third, Stingray contends that Signify inconsistently invokes Rule 19, as Signify admits that other Signify subsidiaries manufacture, sell, and offer for sell the accused products in the U.S., but Signify has singled out Signify NAC in the Motion to Dismiss. (*Id.* at 33).

Signify replies that Signify NAC is the only entity who has allegedly committed an act of infringement under § 271. (Dkt. No. 35 at 5). To the extent that Signify N.V. controlled actions or operations of the Signify NAC or any other subsidiary, Signify contends that those acts were performed outside the U.S. (*Id.* at 5–6). Signify argues that liability for importing the accused products can only attach to Signify NAC, as the other Signify entities simply exported goods to the sole importer in the U.S.—Signify NAC. (*Id.* at 6–8) (citing *Cybiotronics, Ltd. v. Golden Source Elecs.*, Ltd., 130 F. Supp. 2d 1152, 1174 (C.D. Cal. 2001); *Fellowes, Inc. v. Michilin*

*Prosperity Co.*, 491 F. Supp. 2d 571, 584 (E.D. Va. 2007) (distinguishing between importing and exporting under § 271)).

The Court finds that Signify has not shown that Signify NAC is a necessary and indispensable party under Rule 19. Stingray has properly alleged infringement against foreign defendants by selling and importing accused products into the U.S., and by inducing and/or contributing to the same. (*See, e.g.*, FAC, Dkt. No. 15 ¶¶ 3, 15, 19–23, 27–28, 32–33, 37–38, 42–43). Such conduct is plainly within the scope of the patent laws. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, ***offers to sell, or sells any patented invention, within the United States or imports into the United States*** any patented invention during the term of the patent therefor, infringes the patent") (emphasis added). At the motion to dismiss stage, the Court must resolve controverted factual allegations in favor of Stingray, rather than merely accept Signify's argument that the defendants commit no infringing acts in the U.S. *Morgan*, 659 F.3d at 370. Accordingly, the Court finds that it can "accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

Signify's cited cases are not to the contrary. For example, although *Dernick* stated that a subsidiary must be joined where "the subsidiary was the primary participant in the events giving rise to the lawsuit," it ultimately held that the defendant's subsidiary was not an indispensable party because the parent company was the "principal actor." 639 F.2d at 199. Here, Stingray has properly alleged that the parent, Signify N.V., is responsible for the acts of its subsidiaries. (*See* FAC, Dkt. No. 15 ¶¶ 3, 15, 19–23). In *Freeman*, the defendant's responsibility derived solely from its consolidation with the subsidiary. 754 F.2d at 557–559. Here, however, Stingray has alleged that Signify N.V. and the other foreign defendants are responsible for their allegedly infringing conduct, separate and apart from any further infringing acts that may be committed by American

13

subsidiaries such as Signify NAC. Further, unlike in *Haas*, Signify NAC is unlikely to have exclusive control over any evidence that would be "critical to the disposition" of this case that cannot also be obtained from Signify N.V. or another defendant. 422 F.2d at 398.

Notably, Stingray fails to articulate a limiting principle to its proposed application of Rule 19 in this case. Stingray argues that Signify NAC is uniquely situated due to the allegations in the FAC, which seek to impute the acts of Signify NAC onto Signify N.V. and the other defendants. (Dkt. No. 23 at 25–26). As explained above, Stingray's infringement theories do not hinge on Signify NAC's presence as a "principal actor." *Dernick*, 639 F.2d at 199. Even assuming *arguendo* that Signify NAC was a necessary and indispensable party, it is unclear why joinder of numerous direct infringers, end users, and other actors in the chain of distribution would not also be required. Indeed, Stingray in its briefing hints that there are other indispensable parties not joined, including "Cooper Lighting, WiZ, and other subsidiaries that are also not named as defendants." (Dkt. No. 35 at 6 n.3). Signify fails to explain why the line should be drawn to include domestic subsidiaries such as Signify NAC, and not to include retailers such as Home Depot, Walmart, and Amazon. The plaintiff is ultimately the master of its complaint and is not required to join all tortfeasors in a lawsuit. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). Nor is a patentee required to sue all infringers at once. *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996).

Finally, Signify devoted significant briefing and oral argument to the notion that Signify NAC was deliberately omitted from this lawsuit because its inclusion would create an improper venue issue under 35 U.S.C. § 1400(b). (Dkt. No. 23 at 8; Dkt. No. 35 at 9; Dkt. No. 66 at 11:4–10). Stingray responds that Signify's proposed application of Rule 19 would require it to sue any and all domestic subsidiaries in every case, as well as other downstream distributors and retailers, causing severe inefficiencies in terms of filing a complaint and managing subsequent trials in view

of the joinder mandate of 35 U.S.C. § 299. (Dkt. No. 66 at 19:20–25:21). The Court declines to allow these procedural subtexts to derail the analysis of the issues before the Court. The questions of whether venue is proper—and why certain parties were included or not—are unrelated to the issues of personal jurisdiction and joinder under Rule 19. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178-79 (9th Cir. 2004) ("It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper."). Signify has not challenged venue in this case, and it is not a live issue before the Court. Having found that Signify NAC is not a necessary and indispensable party under Rule 19, the Court **DENIES** the Motion to Dismiss as to this ground.

### C. First-to-File Rule

Signify argues that the First Amended Complaint does not relate back to the original Complaint, and the declaratory action filed by Signify NAC in New Jersey is the first-filed action and should take precedence. (Dkt. No. 23 at 29). However, at the oral argument on the Motion to Dismiss, Signify's counsel admitted that because Signify N.V. was named in the original Complaint in this Court, the first-to-file ground is contingent on the Court finding that it does not have personal jurisdiction over Signify. (Dkt. No. 66 at 13:15–22, 18:9–16). Accordingly, the first-to-file issue is moot in view of the Court's finding above that it does have personal jurisdiction over Signify N.V.

## IV.    CONCLUSION

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Signify N.V. (Dkt. No. 23) is **DENIED** for the reasons stated herein. Accordingly, Plaintiff's Motion for Expedited Jurisdictional Discovery and to Extend time to Respond to Defendant Signify N.V.'s Motion to Dismiss (Dkt. No. 33) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 22nd day of October, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE